**Mildred M. SMITH, Agnes L. Stokes, Patricia L. Taylor, Plaintiffs,**

v.

**HAMPTON TRAINING SCHOOL FOR NURSES, etc., et al., Defendants.**

**Civ. A. No. 1002.**

United States District Court
E. D. Virginia,
Newport News Division.

July 19, 1965.

---

William Alfred Smith, Hampton, Va., for plaintiffs.

James, Richardson & James, E. Ralph James, Hampton, Va., for defendants.

WALTER E. HOFFMAN, Chief Judge.

This action, filed under the Civil Rights Act[1] prior to its amendment in 1964, involves the claims of three Negro nurses employed at the Dixie Hospital, Hampton, Virginia, a hospital operated by the Hampton Training School for Nurses, one of defendants herein. It is conceded that the Dixie Hospital has been the recipient of federal funds under the Hill-Burton Act, 42 U.S.C. § 291h(b), which, at all times pertinent with respect to when plaintiffs' causes of action arose, contained the subsequently declared unconstitutional portion of 42 U.S.C. § 291e (f) and the implementing regulation, 42 C.F.R. § 53.112.[2]

Prior to the decision of the United States Court of Appeals in Simkins v. Moses H. Cone Memorial Hospital, 4 Cir., 323 F.2d 959, the Dixie Hospital maintained a cafeteria which was reserved for white persons. Negro nurses were permitted to pass through the main cafeteria line but were required to eat their meals in a separate room situated down the hall from the main cafeteria. On August 8, 1963, the three plaintiffs ate lunch in said cafeteria. The hospital's assistant administrator reprimanded the plaintiffs and advised them that they were violating a policy of eighty years' standing. On the following day, August 9, 1963, with full knowledge of the hospital's policy and regulation, plaintiffs again ate lunch at said cafeteria. They were then discharged and, for the purpose of this proceeding, the sole reason for said discharge was the failure of the plaintiffs to adhere to the regulations of the hospital and the orders of the assistant administrator.[3] Plaintiffs concede that the cafeteria was entirely desegregated several months thereafter. No proceedings or requests were made by plaintiffs subsequent to the letter of August 26, 1963.

Plaintiffs request an injunction against the hospital. It is abundantly clear from the complaint that the dis-

---

1. The statutes relied upon to invoke jurisdiction of the federal court are 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

2. The case of Simkins v. Moses H. Cone Memorial Hospital, M.D.N.C., 211 F. Supp. 628, was decided on December 5, 1962, before the commission of the acts which give rise to the complaints of the three nurses in the present action. That decision held that the mere receipt of funds under the federal-state programs did not render the hospital subject to the restraints of the Fourteenth Amendment against discrimination. The district court did not deem it necessary to pass upon the constitutionality of 42 U.S.C. § 291e (f). The United States Court of Appeals for the Fourth Circuit reversed, Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959, by a three to two decision, holding that the degree of participation by national and state governments was sufficient to find requisite "state action" and further concluding that 42 U.S.C. § 291e(f) and the implementing regulation, 42 C.F.R. § 53.112, were unconstitutional. The opinion of the Court of Appeals was filed on November 1, 1963. Certiorari was denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659, on March 2, 1964.

3. On August 26, 1963, the plaintiffs, through their attorney, requested reinstatement or, in the alternative, to be advised of appellate procedure for reviewing their dismissal. By letter dated September 4, 1963, counsel was advised that plaintiffs would not be reinstated and that no appellate procedure existed for reviewing dismissal orders.

criminatory practice relating to the cafeteria was abandoned several months prior to the institution of this action. As to the cafeteria, it is plain that there is no threatened or apprehended act which justifies an injunction. White v. Sparkill Realty Corp., 280 U.S. 500, 50 S.Ct. 186, 74 L.Ed. 578. Under paragraph IX of complaint, the following allegation is made:

> "The aforementioned acts of the defendants occurred pursuant to the policy, practice, custom and usage of the defendants of maintaining segregation at the Dixie Hospital. Said policy, practice, custom and usage includes the segregation of Negro patients, the segregation of white patients attended by Negro physicians, and formerly included segregation of the main cafeteria of the hospital."

The Court takes judicial notice of a companion action filed by the same plaintiffs and others against the same defendants in the same court and on the same day, said action being numbered Civil 1001 entitled Robin C. Bridges, et al. v. Hampton Training School for Nurses, et al. This action repeats many of the allegations in Civil No. 1002 (the present case), including the verbatim letters from counsel for the nurses to the hospital and the reply thereto. The defendants in Civil No. 1001 filed a motion for summary judgment relying upon the execution of the "Assurance of Compliance with the Department of Health, Education, and Welfare Regulation under Title VI of the Civil Rights Act of 1964", said form having been signed on February 11, 1965, subsequent to the filing of either action. Without suggesting that any discriminatory practices still exist, or that an injunction is or is not justified, a counter-affidavit in opposition to the motion for summary judgment indicates that discriminatory practices may have existed as late as April 30, 1965. Moreover, the mere execution of the "compliance" form does not, standing alone, establish that discriminatory practices cease to exist. Accordingly, the Court, following argument, denied defendants' motion for summary judgment in Civil No. 1001.

The plaintiffs in two separate cases endeavor to maintain class actions seeking the same injunctive relief. Since injunctive relief between the same parties is obtainable in Civil No. 1001, we must look to the real purpose of Civil No. 1002, which is—

(1) To obtain reinstatement to their former positions, and

(2) To secure back pay from the time of dismissal of said plaintiffs to the present date.

The issues are essentially twofold. Initially we must determine whether the "state action" as declared in Simkins v. Moses H. Cone Memorial Hospital, supra, is sufficiently broad to encompass an action against an otherwise purely private corporation for an alleged wrongful discharge. If this question is answered in the affirmative, we must then ascertain whether the defendants, acting under what was then determined to be "not state action" and proceeding under what was assumed to be a valid statute [4] and regulation,[5] are liable for back pay and are required to reinstate the plaintiffs to their former positions. We prefer to answer the second inquiry which will dispose of the case.

At the times relating to the discharge of plaintiffs the judicial decisions seemed to indicate that hospitals receiving city and county funds were not so impressed with "state action" as to require injunction under the Fourteenth Amendment against racially discriminatory practices. Such was the pronouncement of the United States Court of Appeals for the Fourth Circuit in Eaton v. Board of Managers of James Walker Mem. Hospital, 4 Cir., 261 F.2d 521, cert. den. 359 U.S. 984, 79 S.Ct. 941, 3 L.Ed.2d 934, decided by the Court of Appeals on November 29, 1958.

---

4. U.S.C. § 291e(f).

5. 42 C.F.R. § 53.112.

It was in this setting that the defendants acted on August 9, 1963, in discharging the plaintiffs. We are not presently called upon to commend or condemn the actions of the defendants. But it cannot be seriously contended that the law on the subject was anything but favorable to the defendants during August and September, 1963. Does a subsequent change in judicial decisions create a right of action retrospectively?

When this question was argued, counsel for plaintiffs urged the Court to take cognizance of the treatment accorded Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, by our Court of Appeals in Hall v. Warden, 4 Cir., 313 F.2d 483, the latter decision holding, by a divided court, that Mapp was retroactive. On June 7, 1965, the United States Supreme Court held that Mapp v. Ohio, supra, was only entitled to prospective treatment. Linkletter v. Walker, 85 S. Ct. 1731. While we do not believe that Linkletter is necessarily controlling as the Court points out that the Constitution neither prohibits nor requires retrospective effect and, at common law, there was no authority for the proposition that judicial decisions made law only for the future, yet we also see reaffirmed the fundamental principle that a change of judicial decision after a contract has been made on the faith of an earlier one the other way is a change of the law.[6]

█ Weighing the merits and demerits in this case and considering the status of the parties at the time the alleged cause of action arose, we think that public policy dictates that, whatever may be the rights of a Negro discharged from employment following the decision in Simkins by the Court of Appeals and the subsequent denial of certiorari, together with the passage of the Civil Rights Act of 1964, no rights are created which should be accorded retrospective effect. There is nothing in Burton v. Wilmington Parking Authority,

365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45, decided in 1961, which would give rise to the belief that the rule in Simkins was forthcoming. That was a case in which an agency of the State of Delaware constructed a parking facility with a restaurant as an integral part thereof. The entire building was a public structure, owned by a public authority, and serving a public function. Even to this date, following Simkins and the enactment of the Civil Rights Act of 1964, it has not been said that hospitals are "public" to the extent that the private corporations operating same are converted into a public body. Prior to Simkins the Supreme Court of Appeals of Virginia decided Khoury v. Community Memorial Hospital, Inc., 203 Va. 236, 123 S.E.2d 533, on January 15, 1962 (prior to the date on which the presently alleged causes of action arose) expressly holding that a privately owned hospital was not an instrumentality of government for the administration of any public duty, although the service it performs is in the public interest. While the Khoury case must now be reexamined in light of the later decision in Simkins, it is unquestioned that, at the time these causes of action now asserted by the plaintiffs arose, the state and federal law was clear and plaintiffs had no cause of action.

We are not unmindful of Flemming v. South Carolina Electric & Gas Co., 4 Cir. (1956), 239 F.2d 277, which was an action for damages to a bus passenger for violation of civil rights when the bus driver required the Negro passenger to change her seat in accordance with segregation statutes then in force in South Carolina. The Court of Appeals held that the "separate but equal" doctrine had been clearly repudiated by the decisions of the United States Supreme Court. Flemming involved a state statute whereas the instant case pertains to a long-existing policy which had been upheld as constitutional by both state and federal courts. In Flemming the state statute

---

6. Dissenting opinion of Mr. Justice Holmes in Kuhn v. Fairmont Coal Co., 215 U.S. 349, 371, 30 S.Ct. 140, 54 L.Ed. 228, cited with approval in Linkletter v. Walker, infra.

was plainly unconstitutional at the time the cause of action arose; in the present case the policy under attack was plainly valid under judicial decisions in existence at the time the causes of action arose.

While we express serious doubts as to the scope and breadth of the Simkins holding, and specifically whether it permits an action for wrongful discharge against a hospital privately owned and operated but which is also the recipient of Hill-Burton funds, we reserve this question for other courts. Assuming arguendo that such an action is maintainable, we do not believe that it permits an action for reinstatement with back pay as contrasted with the customary action for breach of contract seeking damages for wrongful discharge. Plaintiffs seek to have this Court apply the rule applicable to discharges under federal, state or municipal employment, along with the many authorities applying reinstatement and back pay awards in the labor relations field. We do not believe that the hospital's receipt of Hill-Burton funds converted an otherwise private employment contract into a public employment. Plaintiffs concede in their brief that the form of relief sought is a matter of first impression. Indeed it is, as no authority has been cited to support such a contention other than in matters touching cases before the National Labor Relations Board and direct governmental employment.

The posture of the case does not require the Court to consider the defendants' demand for jury trial on the issue of back pay. Plaintiffs argue that the claimed injunctive relief of reinstatement with an award of back pay is an equitable remedy with no right to a jury trial. They admit that there is no statutory right of reinstatement and back pay. It is not clear whether they contend that the plaintiffs were under any duty to minimize the damages occasioned by any loss of pay—apparently they feel that reinstatement and the award of back pay is automatic without regard to the earnings, or ability to earn wages, during the period following their alleged wrongful discharge. It is certainly true that in the usual action for wrongful discharge and consequent loss of wages, a jury may be demanded.

Treating the motion to dismiss as a motion for summary judgment on the pleadings, supplemented by the concessions of counsel in the briefs and oral argument, an order will be entered granting summary judgment and dismissing the action at the cost of the plaintiffs. Counsel for defendants will prepare and present such order, after first affording counsel for plaintiffs an opportunity to inspect and endorse same.