Floyd McGEE, Allee Esters, and Ella Mae Blakes, Plaintiffs,

v.

RICHMOND UNIFIED SCHOOL DISTRICT et al., Defendants.

Civ. No. C69–3GBH.

United States District Court
N. D. California.

Dec. 11, 1969.

Eugene M. Swann, Stephen P. Berzon, Peter N. Hagberg, Contra Costa Legal Services Foundation, Richmond, Cal., Michael E. Ballachey, Berkeley, Cal., for plaintiffs.

John B. Clausen, County Counsel, Contra Costa County, by Saul Fishman, Deputy County Counsel, Martinez, Cal., for defendants.

## MEMORANDUM OF DECISION

GEORGE B. HARRIS, Chief Judge.

The above entitled cause is before this Court on plaintiffs' complaint which alleges that their constitutional rights have been abridged by reason of dismissal from public employment for signing a petition during a school tax election. The plaintiffs request a mandatory injunction reinstating them to their former positions, damages in the amount of back pay and general damages.

This Court entered a temporary restraining order in the case of plaintiff McGee which ordered him reinstated to his former position pending the outcome of trial on the merits.

The historical background of this case arises out of a series of events which took place in the Richmond School District during the school year 1968–1969.

In December, 1968, the then Richmond School Board (hereinafter referred to as the "old Board") by a vote of three to two voted in the "Phase I Integration Plan" of compulsory two-way bussing of children in the district. This same board determined that a tax increase of $2.50 would be necessary to finance "Phase I" and other programs in the district. On April 15, 1969, this proposed $2.50 tax increase was voted down by the Richmond electorate. At the same time, the members of the old Board who had voted in "Phase I" were turned out of office and a "new Board" was elected.

During the interim period, prior to the swearing in of the new Board, a tax increase of $1.50 was proposed with the vigorous support of the new Board. It was at this point that the petition in question was signed by the plaintiffs and Mrs. Henrietta Scott. The petition urged the defeat of this second proposed tax increase because the "new board has not addressed itself to the needs of the black community in their campaign." [1]

On July 1, 1969, the new Board was sworn into office. During this meeting it removed all supervisory powers from then Superintendent Dr. Widel and delegated these powers to then Assistant Superintendent Dr. W. W. Snodgrass. During this meeting the new Board also removed the "Phase I Integration Plan."

On July 8, 1969, the Richmond electorate voted in favor of the $1.50 tax increase. On July 10, 1969, the new Board adopted the "Open Enrollment Integration Plan."

1. See Plaintiffs' Exhibit No. 1, Affidavit of Floyd McGee, attachment No. 3.

In August, 1969, following an interviewing procedure, the three plaintiffs and Mrs. Scott were informed that they would not be rehired as School Community Workers during school year 1969–1970.

This matter regularly came to trial before the Court sitting without a jury on October 21, 1969. During the course of the hearing on the motion for preliminary injunction it was stipulated by and between the respective parties that in view of the extensive record the matter should be regarded as a trial on the merits.

This Court having duly considered all of the testimony, the exhibits on file, the oral argument of the attorneys and the briefs has reached the following decision and opinion.

■ The plaintiffs herein have sustained the burden of establishing a prima facie case that plaintiffs' signatures on the petition, and active participation in the tax election (protected activity under the First Amendment) were the true reason and purpose of the Richmond School District in not rehiring plaintiffs. Contra testimony was centered mainly around vacuous general denials, without basic evidentiary support.

During the course of the trial, the outstanding qualifications of the plaintiffs and Mrs. Scott were unchallenged. Plaintiff McGee, plaintiff Esters and Mrs. Scott were School Community Workers from the inception of the program in 1965 under Title I of the Elementary and Secondary Education Act. Plaintiff Blakes had served as a School Community Worker for two years at Nystrom School. All four of these School Community Workers were highly recommended by their superiors. They were said to have made great sacrifices in their work which often went beyond the normal call of duty.[2]

Several persons who held high positions in the Richmond School District administration made statements after the circulation of the petition which indicated that these four school community workers had incurred the disfavor of

---

2. The extraordinary nature of the qualifications, experience and sacrifice of these four employees was extensively documented by the uncontradicted favorable testimony of at least nine witnesses as well as by affidavits and the personnel files of plaintiffs. Discussion of plaintiffs' background and experience appears in the following places in the transcript and record:

(a) affidavits:

(1) affidavit of Denzil Widel, Superintendent of the Richmond Unified School District until September, 1969, stated that he considered plaintiffs to be extremely able school community workers, and that he considered Henrietta Scott "the most outstanding school community worker."

(2) affidavits of Dr. Alvin Thompson, member and former president of the Citizen's Advisory Committee on the school community worker program, FLOYD McGEE and ELLA MAE BLAKES.

(b) Testimony:

(1) Mrs. Betty Lacy, teacher at Nystrom School and former coordinator of the school community worker program.

(2) Richard Hunter, former principal at Nystrom and presently principal at Longfellow Elementary school in Berkeley.

(3) Joe Velardo, former principal at Nystrom, presently employed in his own business.

(4) Leo Gasperdone, Integration Specialist for the Richmond Unified School District.

(5) William Henderson, Vice Principal at Verde Elementary school.

(6) John Minor, formerly in charge of special federal projects in the Richmond Unified School District, and presently superintendent of the Revenswood School District, who used plaintiffs ESTERS and McGEE as consultants in 1969 to help establish the school community worker program in his District.

(7) ALLEE ESTERS.

(8) HENRIETTA SCOTT.

(9) Lee Conway, who testified that in past years the school community worker program at Nystrom, where only FLOYD McGEE, ELLA BLAKES and HENRIETTA SCOTT had ever worked, was "one of the best school community worker programs in the United States."

the new Board by their tax election activities and that their jobs were in jeopardy. School Board Chairman Goy Fuller stated that certain of the School Community Workers had "sowed dissention" in attempting to defeat the July 8 tax increase election.[3] Dr. Snodgrass, the new superintendent, stated to Richard Hunter, the then principal of Nystrom School and one of those who had signed the petition in question, that he would institute proceedings at the proper level if he could substantiate the fact that Hunter had worked for the defeat of the tax election.[4]

Compelling testimony was given by Mr. George Blumenson, administrative assistant to the superintendent, who informed plaintiff Esters that the School Community Workers who had signed the petition in opposition to the July 8 tax election "had put their necks on the chopping block." This statement, coming from one so highly placed in the administration, is indicative of the general attitude of the administration on this vital factor. Although Mr. Blumenson took the stand to attempt to explain away this statement as a personal observation, the fact remains that his personal observations necessarily had to be based on the official information to which he had privity in his administrative position.

There was additional testimony relating to the jeopardy of the plaintiffs, due to their tax election activities, by highly placed members of the Richmond School District Administration.

Mr. Leo Gaspardone testified that he had been told by Dr. Robert Griffin, assistant superintendent for elementary education, that plaintiff McGee was unacceptable to the Board.

Byron Lambie, supervisor of compensatory education, who was in charge of developing the ESEA Title I projects, testified that he was aware that the four community workers who had signed the petition were in jeopardy and that these fears were communicated to Richard Hunter at the time. Further, Mrs. Betty Lacy, a teacher at Nystrom School and former supervisor of the school community worker program, testified that Dr. Lee Conway, consultant in charge of evaluating special programs, told her that the jobs of the plaintiffs and Mrs. Scott were in jeopardy following the tax election, although Dr. Conway denies having made such a statement.

Another factor of probative value is the testimony demonstrating that all of the School Community Workers who signed the petition, with the exception of Mrs. Dolores Jackson, were not rehired. Mrs. Jackson, the lone survivor, apparently exculpated herself by explaining to the interview committee that her name was used without her permission.

With the exception of Jesse Smith, all other employees of the Richmond School District who signed the petition were tenured and not subject to the summary procedures used against the School Community Workers. Mr. Smith is now apparently a coordinator employed and paid by the Model Cities Program and not by the Richmond School District.

The School District relies on an interviewing process in which plaintiffs Blakes and McGee were placed at the bottom of the list and on a statement that the continued employment of Mrs. Scott and plaintiff Esters was "not in the best interest of the district."[5] Both

3. See Plaintiffs' Exhibit No. 1, Affidavit of Floyd McGee, attachment No. 5.

4. See Plaintiffs' Exhibit No. 1, Affidavit of Floyd McGee, attachment No. 4. This statement was reported in the *Oakland Tribune* on August 8, 1969. The *Tribune* news report was authenticated by Mr.

Richard Gardner, *Tribune* reporter, who testified with regard to his interview of Dr. Snodgrass which culminated in the story.

5. Affidavit of Dr. W. W. Snodgrass, p. 4.

the interviewing process and the statement appear to be self-serving. No evidence or testimony during trial was introduced by defendants to support either the integrity or the findings of the interview panel or to support the statement as to the undesirability of Mrs. Scott and Mrs. Esters. In light of all other factors, this Court cannot presume in favor of the findings of the interview panel.[6] Nor can this Court accept the bare, unsupported allegation that Mrs. Scott and Mrs. Esters are undesirable after the testimony offered in their behalf.

The totality of the evidence adduced and the reasonable inferences to be drawn compels only one conclusion—the plaintiffs and Mrs. Scott were not rehired because of their participation in the tax election by signing the petition in opposition to the $1.50 tax increase. Johnson v. Branch, 364 F.2d 177, 182 (Cir. 4, 1966).

■ The law, as stated by the United States Supreme Court, is clear that a person, even though untenured, may not be denied public employment for an unconstitutional reason. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1966).

In *Keyishian* the one year contract of an untenured instructor at a state university was not renewed because he refused to sign an unconstitutionally vague loyalty oath. The Supreme Court held that a public school employee may not be denied re-employment for engaging in constitutionally protected activities. Cf. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L. Ed.2d 811 (1968).

Moreover, public participation in a school tax increase election by a school district employee is protected by the First Amendment. Pickering v. Board of Education, supra, at 571, 572, 88 S. Ct. at 1736, states:

"More importantly, the question whether a school system requires additional funds is a matter of legitimate public concern on which the judgment of the school administration, including the School Board, cannot, in a society that leaves such questions to popular vote, be taken as conclusive. On such a question free and open debate is vital to informed decision-making by the electorate. Teachers are, as a class, the members of a community most likely to have informed and definite opinions as to how funds allotted to the operation of the schools should be spent. Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal."

■ It is manifest that even if the School Community Workers in this case did not have tenure they could not have been denied public employment for engaging in constitutionally protected activities. McLaughlin v. Tilendis, 398 F. 2d 287 (Cir. 7, 1968), states unequivocally that "Even though the individual plaintiffs did not yet have tenure, the Civil Rights Act of 1871 gives them a remedy if their contracts were not renewed because of their exercise of constitutional rights." (p. 289) See also: Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675 (1966); Johnson v. Branch, 364 F.2d 177 (Cir. 4, 1966).

■ Having reached the conclusion that plaintiffs were not rehired because they engaged in activity protected by the First Amendment, this Court may now issue a mandatory injunction ordering the reinstatement of plaintiffs to the position which they held at the close of the school year 1968–1969. Johnson v. Branch, supra.

In view of the foregoing, it becomes unnecessary to pass upon the challenge as to the constitutionality of the California Education Code, Section 13581.2(b).

6. It is significant to note that counsel for defendants refused to disclose the content or subject matter of the findings of the interview panel with particular reference to the reasons assigned for dismissal.

Accordingly, it is ordered that plaintiffs herein be, and they are, restored to the several positions which they held at the close of the school year 1968–1969;

It is further ordered that supplemental hearings be had and conducted herein for the purpose of determining any alleged loss of wages, etc.

The foregoing memorandum of decision embraces the Court's findings of fact and conclusions of law and may be regarded as the findings of fact and conclusions of law in conformity with Rule 52 F.R.Civ.P.

Let judgment be entered accordingly.