**HANOVER TOWNSHIP FEDERATION OF TEACHERS et al.**

v.

**HANOVER COMMUNITY SCHOOL CORPORATION et al.**

Civ. No. 70 H 85.

United States District Court,
N. D. Indiana,
Hammond Division.

Aug. 3, 1970.

Supplemental Memorandum
Aug. 14, 1970.

Saul I. Ruman, Hammond, Ind., for plaintiffs.

Dennis J. Stanton, Crown Point, Ind., for defendants.

## MEMORANDUM

BEAMER, District Judge.

The twenty-two plaintiffs named above were teachers in the Hanover School System during the school year 1969–70. On April 27, 1970, they were offered contracts for the 1970–71 school year. The School Board notified the teachers that failure to return the contracts by June 1, 1970, would be taken by the School Board as a rejection of further employment rights. The teachers did not return their contracts by June 1, 1970, and were notified by the School Board on June 5, 1970, that they would not be re-employed for the 1970–71 school year. Six of the twenty-two teachers were among the plaintiffs named in the

original complaint and the first and second amended complaints. However, none of the allegations in those complaints involved the six, and it now appears that they had been improperly joined as plaintiffs in the original and the first two amended complaints. The third amended complaint added allegations concerning the firing for refusal to return the contracts, and all twenty-two teachers named above were among the named plaintiffs. At the time the third amended complaint was filed, the Court indicated that it had serious doubts as to whether subject matter jurisdiction existed as to these twenty-two plaintiffs. The Court stated that it would not rule on the matter until defendants had filed a motion to dismiss. The defendants, however, have not seen fit to file a motion to dismiss other than an oral motion at the time the Court raised the question, nor have they filed an answer to the third amended complaint. In fact, defendants' brief after the trial does not even mention these twenty-two plaintiffs or their claims. The Court is thus forced to raise the jurisdictional question on its own motion.

■ The twenty-two plaintiffs listed above contend that the action of the defendants in sending out individual contracts to the teachers constituted a failure of the School Board to bargain in good faith with the Hanover Township Federation of Teachers, the collective bargaining agent for the teachers. In Indianapolis Education Ass'n v. Lewallen, 72 LRRM 2071 (7th Cir. 1969), a group of Indianapolis schoolteachers contended that their constitutional rights had been infringed by actions of the School Board which were almost identical to those involved here. In rejecting the contentions of the teachers, the Court of Appeals ruled as follows, at 2072:

> The gravamen of the complaint goes to the failure on the part of the defendants-appellants to bargain collectively in good faith. But there is no constitutional duty to bargain collectively with an exclusive bargaining agent. Such duty, when imposed, is imposed by statute. The refusal of the defendants-appellants to bargain in good faith does not equal a constitutional violation of plaintiff-appellees' positive rights of association, free speech, petition, equal protection, or due process. Nor does the fact that the agreement to collectively bargain may be enforceable against a state elevate a contractual right to a constitutional right.

In seeking relief here, the twenty-two plaintiffs claim the Court has jurisdiction under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3) and (4), both of which require a showing of a deprivation of a federal constitutional or statutory right. The contentions of the plaintiffs that the School Board's action violated state law or constituted a breach of a duty to bargain in good faith raise issues cognizable in state courts, but fail to present any federal question. Therefore, the Court does not have jurisdiction over the subject matter of the claims of the twenty-two teachers listed above, and the action must be dismissed as to them.

## SUPPLEMENTAL MEMORANDUM

A teachers union known as the Hanover Township Federation of Teachers was organized in the Hanover school system during the 1968–69 school year. The union undertook a short strike at the end of the 1968–69 academic year and again at the beginning of the 1969–70 school year. In April of 1970 the following teachers were notified that their contracts would not be renewed for the 1970–71 school year: Michael McCasey, James Forrester, Marsha Keene, Rocman Whitsell, Jack Beanblossom, John Harkins, and Helen Snedden, all non-tenure high school teachers, Larry

Kirgan, a high school teacher on tenure, and Eleanor Varda, an elementary teacher not on tenure. All were members of the union which had been on strike. These teachers brought suit under 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3) and (4), claiming that the nonrenewal of their contracts was in deprivation of their associational rights under the United States Constitution. Joined as defendants are the members of the Hanover school board, the board itself, Paul Scamihorn, who is the Superintendent of the school corporation, and John Roper, who is the principal of the high school.

█ The complaint is brought in three counts. Count I contains the allegations of infringement of plaintiffs' First Amendment rights of association. Count II further alleges that the defendants breached their duty to negotiate with the union. In Count III plaintiffs contend that the nonrenewal of their contracts failed to comply with the procedural due process requirements of the United States Constitution. The Court now finds that Counts II and III must be dismissed. No federal question is raised in Count II, and therefore the Court is without subject matter jurisdiction. Whether the school board breached a duty to negotiate is a question of state law. As to the plaintiffs' rights to procedural due process, this Court need not express an opinion as to the validity or sufficiency of the procedures by which the plaintiffs' contracts were not renewed, since the full trial in this Court has provided the plaintiffs with the procedural due process required by the Constitution. There remains for consideration, therefore, only the allegations of discrimination contained in Count I.

█ It is, of course, recognized that a school board has a great degree of discretion in making determinations as to the hiring and firing of its teachers.

Nevertheless, as stated in Johnson v. Branch, 364 F.2d 177, 180 (4th Cir. 1966):

> However wide the discretion of School Boards, it cannot be exercised so as to arbitrarily deprive persons of their constitutional rights. Zimmerman v. Board of Education, 38 N.J. 65, 183 A. 2d 25, 27–28 (1962); Garner v. Board of Public Works, 341 U.S. 716, 725, 71 S.Ct. 909, 95 L.Ed. 1317 (1951).

The numerous court decisions dealing with the substantive rights of teachers have made clear the extent of the protection afforded by the Constitution. As summarized in the recent decision in Roth v. Board of Regents of State Colleges, 310 F.Supp. 972, 976 (W.D. Wis. 1970):

> The employment of a teacher in a public school cannot be terminated because he has exercised that freedom secured to him by the Constitution of the United States. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 605, 606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); Bomar v. Keyes, 162 F.2d 136 (2d Cir. 1947), cert. den. 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400. This substantive constitutional protection is unaffected by the presence or absence of tenure under state law. Johnson v. Branch, 364 F. 2d 177 (4th Cir. 1966), cert. den. 385 U.S. 1003 [87 S.Ct. 706, 17 L.Ed.2d 542]; see McLaughlin v. Tilendis *supra;* Bomar v. Keyes, *supra;* Lucia v. Duggan, 303 F.Supp. 112, 118 (D. Mass. 1969). Nor is it material whether employment is terminated

during a given contract period, or not renewed for a subsequent period. McLaughlin v. Tilendis, *supra.*

█ The issue here is not whether the plaintiffs have a constitutional right to be teachers or to receive payment for extracurricular activities. The question is whether the termination of the plaintiffs' contracts for teaching and extracurricular activities deprived the plaintiffs of the freedom of association guaranteed them by the Constitution. It is the opinion of the Court that the actions of the defendants were motivated by a desire to retaliate against members of the union, and that, in terminating the contracts of the plaintiffs, the defendants deprived them of their constitutional rights in violation of 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343.

The evidence at trial established that not only were the plaintiffs members of the union, but among them were the leaders of the union and some of its most active members. Kirgan was the president of the union and a member of the contract negotiating committee. Keene was the treasurer of the union and a former vice-president; she was also a member of the negotiating committee. Whitsell was secretary of the union, a member of the grievance committee, and a member of the negotiating committee. McCasey was a former vice-president of the union, a former member of the grievance committee, and chairman of the contract negotiating committee. Forrester was a member of the negotiating committee and was chairman of the grievance committee. All five of the high school teachers who were on the negotiating committee wre fired.

The testimony and exhibits demonstrated the competency of these nine teachers. Most of the teachers had had several years of teaching experience. The numerous instances of praise which the teachers had received were in direct contrast with the dearth of evidence as to past criticism. In fact, prior to September of 1969, there were no complaints in the files of any of these teachers. It is interesting to note that as late as May 8, 1969, Forrester was given the "highest recommendation" by John Todd who was then principal of the high school. In 1967, Superintendent Scamihorn had rated Forrester "outstanding." Kirgan, the band director, received in 1968 a letter of recommendation from Todd and two letters of recommendation from Scamihorn. The fine contest record of the band and its individual members directly reflects the abilities of Kirgan. McCasey was chairman of the high school English department, and was one of only two teachers at Hanover to ever receive the Junior Chamber of Commerce Outstanding Young Educator Award. Kirgan was the other.

At the time of trial, the defendants presented various reasons for the firing of these teachers. Many of the reasons given, even if true, would be of limited significance. The evidence at trial disclosed that some of the incidents listed did not occur until after the school board had voted not to renew the contracts. The unimportance of most of the items is demonstrated by the fact that Scamihorn had never, and Roper only rarely, discussed any of these matters with the teachers themselves. The evidence showed that when problems had been discussed with the teachers, in most instances the matters were corrected.

The Court feels no need to examine in detail the reasons for discharge alleged by the school board, because the Court is convinced that those reasons are merely illusory and intended to cover up the real motives for the termination of the teachers. The activities of both Roper and Scamihorn indicate that their intention to have the union teachers discharged was formed prior to the incidents upon which the school board supposedly relied.

Both Roper and Scamihorn maintained personal files in which they collected notations as to the activities of various union teachers. Scamihorn admitted that he collected notes only on those union teachers who were later discharged, and that since the time he had been appointed superintendent he had never collected notes on any other teachers. Roper, who had previously been a teacher in the Gary school system, became principal at Hanover High School on August 1, 1969. He testified that prior to September, 1969, none of the plaintiffs' files contained any critical comments. Within two months after the beginning of the 1969–70 school year Roper took home the files of thirteen of the high school teachers. All thirteen were members of the union. Included in the thirteen files were those of the eight high school teachers whose contracts were terminated in April of 1970. There was no evidence that at that early point in the school year those teachers had done anything which would warrant their receiving such special attention.

Kirgan testified that prior to the 1969–70 school year when he had submitted a budget for band expenditures he had always received money. After Kirgan was elected president of the union in the spring of 1969, his budget requests for the band were refused, and he was given no money by the administration to support the band program.

Over the past several years, only three teachers had been considered for termination. In each case Scamihorn had requested the teachers to resign rather than taking the matter directly to the school board. No such request was made of the nine teachers who are plaintiffs here.

Roper testified under oath at the time of the trial that he did not know that any of the teachers fired were members of the union. This testimony was direct-ly contradicted by the fact that Roper was present at contract negotiations at which five of the teachers fired represented the union. Roper did admit at one point in his deposition that he knew that McCasey, Whitsell, Keene, Kirgan and Forrester were members of the union. At the time of trial, however, he was unwilling to admit even this.

Both Roper and Scamihorn testified that prior to April 14, 1970, they had not discussed with each other the names of teachers who they thought should be denied a contract for the school year 1970–71. Yet at the April 14 meeting of the school board, Scamihorn and Roper each recommended that the same eight teachers be terminated. Roper explained that it was just a coincidence that both he and the superintendent had suggested termination of the same people. Even more revealing were the actions of Scamihorn. The superintendent maintains that at no time prior to April 14 had he discussed with Roper the possibility of discharging the teachers whose contracts were not renewed. Nevertheless, in March of 1970, Scamihorn had written a letter to Indiana State University requesting applicants for the specific subjects taught by all of those teachers whose contracts were not renewed in April.

The cumulation of all these occurrences creates a strong inference that Roper was hired as principal of the high school, not for the primary purpose of being the administrative head of the school, but rather for the purpose of destroying the teachers union. Roper had originally been rejected for the job of principal, but was hired when the first choice had quit the job after a very short period of time. Immediately after taking his position, Roper began a clandestine operation to accumulate information on a select group of union members, even though there was nothing

in the files to indicate that these teachers might be incompetent. The failure of Roper and Scamihorn to discuss any problems with the teachers is further evidence of their goal of fabricating a basis for discharge. The efforts of the administration to stifle the union movement and then cover up their actions was never more clear than in the testimony of Roper at his deposition and at the time of the trial; when questioned about the plaintiffs' union activities and the reasons for which they were fired, his answers were at times evasive, at times fatuous, and often both.

The evidence in this case leads to the inevitable conclusion that the plaintiffs' teaching contracts were terminated in retribution for their union activities. It is the opinion of the Court that, but for plaintiffs' association with the union, their contracts would have been renewed. By discharging the nine teachers for exercising that freedom of association guaranteed by the Constitution, the defendants have violated the civil rights of these plaintiffs.

The Court does not wish to leave the impression that a person involved in union activities is somehow immune from having his teaching or extracurricular activities terminated. Certainly, a school board has the authority to release any teacher who engages in activities which prove to be seriously detrimental to his classroom work, even where those activities are on behalf of a union or other association.

Since the Court has determined that the termination of plaintiffs' contracts was unlawful, the defendants are ordered to offer the nine named plaintiffs contracts for the 1970–71 school year on terms and conditions no less favorable than in their contracts for the 1969–70 school year, including responsibilities for extracurricular activities. The Court further enjoins the defendants from discriminating in any way against members of the Hanover Township Federation of Teachers for exercising their First Amendment right of association.

This opinion will constitute the Court's findings of fact and conclusions of law.