**Peggy BURTON, Plaintiff-Appellant,**

v.

**CASCADE SCHOOL DISTRICT UNION HIGH SCHOOL NO. 5 et al., Defendants-Appellees.**

No. 73–1568.

United States Court of Appeals, Ninth Circuit.

March 28, 1975.

Charles F. Hinkle (argued), Portland, Or., for plaintiff-appellant.

Robert W. DeArmond, Salem, Or., for defendants-appellees.

Before LUMBARD,* MERRILL and WRIGHT, Circuit Judges.

## OPINION

PER CURIAM:

This is an appeal by a non-tenured, homosexual schoolteacher from a district court order granting her damages and attorney fees for what was adjudged her wrongful dismissal, but refusing to reinstate her to her old position. We affirm.

Appellant Peggy Burton began to teach at Cascade High School in July 1970. She was in the second month of her second full year as a teacher of biology, earth sciences, ecology, consumer education, and business mathematics,

and as supervisor and referee of girls' sports activities. The defendant Federico, the school principal, confronted her with information coming to him from the mother of a student that appellant was a homosexual. At a conference with Federico and, again at an appearance before a special school board meeting, appellant acknowledged that she was a "practicing homosexual."

At the meeting on October 18, 1971, a resolution was adopted suspending Ms. Burton upon "recommendation of the administration based on her admitting to be a homosexual." Later, allegedly on advice of counsel, the board revised its October 18 resolution to read:

> Peggy Burton be dismissed and the contract terminated as a teacher in the district because of her immorality of being a practicing homosexual.

This was done in order that the dismissal might comply more closely with Ore.Rev. Stat. § 342.530(1)(b), which before its repeal in 1973 provided:

> Dismissal of teachers. (1) During the period of the contract . . . the district school board shall dismiss teachers only for:
>
> .     .     .     .     .
>
> (b) Immorality;
>
> .     .     .     .     .

Plaintiff initiated this action under 42 U.S.C. § 1983, seeking declaratory relief that defendants had violated her civil rights by their dismissal of her on account of her status as a practicing homosexual. She also sought damages and reinstatement to her teaching position. The district court sustained her claim that the dismissal was improper because section 342.530(1)(b), the statute upon which it was based, was unconstitutionally vague. However, the court limited its relief to an award of money damages amounting to the balance of her salary for the teaching year 1971–72, one-half of her salary for the following teaching year, and $750 for attorney fees and costs, along with an order that the school

---

* Senior Circuit Judge of the Second Circuit.

expunge from its board meeting records and personnel files all references to plaintiff's dismissal. The court refused to order reinstatement to the teaching position.

Plaintiff appealed the district court's refusal to order reinstatement, and defendants cross-appealed from the money judgments in plaintiff's favor. Heretofore, on November 13, 1974, we dismissed the cross-appeal for failure to file a brief within the time prescribed by rule, or at all.

This leaves only the question whether the district judge erred in refusing to order that the plaintiff be returned to her old position. In analyzing this question, we note that plaintiff had neither tenure, nor even sufficient seniority to qualify for consideration for a three-year contract after the school year ended, under Ore.Rev.Stat. § 342.508 (1971). Under Oregon law, her only "rights" respecting reemployment at the end of the 1971–72 school year, had the school board not wrongfully dismissed her during the period of her contract, would have been governed by Ore.Rev.Stat. § 342.513(1) (1974), which provides:

> 342.513 *Renewal or nonrenewal of contracts for following year.* (1) Each district school board shall give written notice by March 15 of each year to all teachers . . . in its employ who are not under tenure or who are not eligible for a three-year contract under ORS § 342.508. . . . [of] the renewal or nonrenewal of the contract for the following school year. In case the district school board does not renew the contract, the material reason therefor shall, at the request of the teacher . . . , be spread upon the records of the school district and the board shall furnish a statement of the reason for nonrenewal to the teacher . . . . If any district school board fails to give such notice by March 15, the contract shall be considered renewed for the following school year at a salary not less than that being received at the time of renewal. . . .[1]

Appellant was awarded the full salary she would have received for that part of her contract following her unlawful dismissal pursuant to an unconstitutional statute. We cannot say that the district judge abused his broad equitable discretion in not also ordering that Ms. Burton be allowed to return to her teaching post for a period at least equivalent to the unserved portion of her contract.[2] The trial judge faced a difficult

---

1. Judge Lumbard's dissenting opinion finds in the language of § 342.513 a judicially cognizable interest in reemployment, since "the statutory requirement that it provide reasons for nonrenewal precludes it from having completely unfettered discretion since the board could not give a constitutionally unacceptable reason." However, the Board could not refuse to rehire Ms. Burton for a constitutionally unacceptable reason even if it were allowed to do so by Oregon law.

   Conversely, so long as nothing under the applicable Oregon statutes prevented the Board, acting in good faith, from refusing to rehire Ms. Burton for any constitutionally acceptable reason, any interest that she might have in renewal of her contract would be purely speculative. Her "adequacy" as a teacher would be no guarantee of retention. We said recently in Burdeau v. Trustees, 507 F.2d 770, 774 (9th Cir., 1974):

   "Appellant has pointed to nothing in the statutes, or in the Statewide rules, or in the regulations of the particular institution which state that if he meets certain standards his reemployment is guaranteed. Until tenure is obtained he may equal or exceed minimum requirements for evaluation and still the school may prefer to employ someone else for the position he seeks." 507 F.2d at 774.

   The trial judge correctly refused to speculate whether the Board would have ultimately refused to rehire appellant for some unconstitutional reason, had she not been prematurely dismissed.

2. Of course, the grant or withholding of remedial relief is not wholly discretionary with the trial judge. Cf. e. g., Union Tool Co. v. Wilson, 259 U.S. 107, 111–112, 42 S.Ct. 427, 66 L.Ed. 848 (1922) (Brandeis, J.), "The private or public rights that the decree sought to protect are an important measure of the remedy." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949).

   Nevertheless, the trial judge is in the better position to determine whether a remedy will adequately protect a litigant's legally cognizable interests. See discussion in text infra.

task of balancing the appellant's interest in completing her wrongfully terminated one-year contract against the disruption which he may have felt her reinstatement for a few months would inevitably cause to the school district, the school's staff, the student body, and the community in light of the long-standing nature of the controversy.[3]

Reinstatement of wrongfully dismissed teachers has occasionally been required, without consideration of whether or not they were tenured. This extraordinary equitable remedy has commonly been imposed in factual situations involving racial discrimination, the special target of federal and state legislation (and of three constitutional amendments). *See, e. g.*, Franklin v. County School Board, 360 F.2d 325, 327 (4th Cir. 1966) (where black teachers only were dismissed upon merger of two previously segregated schools, priority rehiring rights and dam-

ages were ordered due to the discriminatory pattern of the dismissals).

The other common factual situation in which reinstatement has been required involves the case in which dismissal appears to have been in reprisal for the legal exercise of free expression in a manner critical of the public employer. *See* Pred v. Board of Public Instruction, 415 F.2d 851 at 859 (5th Cir. 1969). *Cf.* Stewart v. Pearce, 484 F.2d 1031 (9th Cir. 1973).

■ However, even courts which have ordered reinstatement have nonetheless intimated that the appropriate remedy may be influenced by a careful weighing of all facts and circumstances.[4] On the facts presented in the case before us, we cannot say that an award limited to monetary damages was inadequate for a wrongful dismissal, under an unconstitutionally vague statute, of a nontenured teacher.

He is also better able to assess, in a case such as this, whether his determination that the statutory basis relied upon by the school board was constitutionally defective and demanded an award of damages to the wrongfully dismissed teacher, will be a sufficient deterrent to future board actions impairing *the school district's contractual obligations.*

3. Appellant suggests that

"[t]he district court may have made the not unreasonable assumption that some degree of personal antagonism inevitably exists where a person is discharged from his teaching assignment for reasons which are based, at bottom, on the prejudices of school officials.

(Br. of Appellant at 16.)

However, she argues that even assuming the correctness of the district court's conclusion that her return to the classroom "wouldn't work out," this still would not justify denying her reinstatement. She notes that similar antagonism would also exist whether the teacher is fired because she criticizes the school board, because she is black, *or because her religious convictions offend the* majority of the townspeople. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 234, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Brennan, J., concurring in part and dissenting in part). Yet in such situations, some appellate courts have found that back pay may not obviate the defendants' obligation to reinstate plaintiff, for "[t]he right sought to be vindicated is not a contractual one, nor could it be since no right to reemployment existed. What is at stake is

the vindication of constitutional rights . . ." Pred v. Board of Publ. Instruction, 415 F.2d 851, 856 (5th Cir. 1969).

In this case, however, the nature of the constitutional right sought to be vindicated is not such as to compel reinstatement frequently ordered in response to racially motivated dismissals, or to those aimed at punishing the exercise of free speech.

Ms. Burton challenged the vagueness of the statute which was relied upon to justify her dismissal. The district court upheld her contention and ruled the statute unconstitutional. At the same time the court awarded damages in excess of the amount due on the unserved portion of her contract. As discussed in text, *infra,* the district judge did not abuse his discretion in finding that his order and award afforded both adequate relief for the appellant and adequate protection against subsequent attempts to dismiss teachers under provisions such as § 342.530(1)(b).

4. *See* Pred v. Board of Public Instruction, *supra,* at 859:

"For on the facts must rest the determination of whether the denial of a continuing contract was (a) a reprisal for these actions in expression of ideas, thoughts, or associations rather than permissible nondiscriminatory professional evaluations and, if so, (b) whether under the circumstances in relation to the reasonable demands of a system of organized responsible learning these actions were protected. On a finding of (a) and (b) the remedy (c) might well also depend on all of the facts."

The common thread running through the cases in which reinstatement was directed after appellate review seems to be that such relief is necessary, not only to redress injury to the complainant but also to discourage school systems from taking similar action against other teachers in the future. As noted previously, we cannot say that plaintiff was denied adequate compensation for her claimed interests in finishing the school year. Nor can we say that the district judge erred in concluding impliedly that declaratory relief and damages would provide a sufficient deterrent to future board attempts to dismiss teachers serving annual appointments on the basis of "immorality."

Our holding is not inconsistent with Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). There, the Supreme Court suggested that a refusal to rehire a nontenured teacher on the basis of "immorality" would at least require a hearing at which the teacher had an opportunity to refute this charge which might stigmatize his reputation in the community. Here, Ms. Burton was given a hearing at which she freely admitted her homosexuality, and the district court repudiated the school board's attempt to justify its dismissal of her by characterizing this condition as "immoral." The basis for any possible stigma has been eliminated.[5]

Appellant was granted full pay for the loss resulting from the wrongful termination of her one-year contract. And although the parties have stipulated that Ms. Burton was an "adequate teacher," we cannot say that her chances of reemployment were such as to warrant our finding the same type of "property interest" in reemployment which might require reinstatement of a tenured teacher, or one under longer-term contract with the district.[6] We hold only that, given the speculative nature of any expectation of reemployment appellant may have had,[7] the district judge's award of an additional half-year's salary (above and beyond the back pay award for the unserved portion of her original contract) seems generous, and well within the lower bounds of his remedial discretion.

The judgment of the district court is affirmed.

LUMBARD, Circuit Judge (dissenting):

I dissent regarding the relief to which Ms. Burton is entitled.

Reinstatement is the appropriate remedy for an individual who has been removed from her job in violation of the Constitution. Most courts have not treated reinstatement as an "extraordinary equitable remedy." In fact, they have ordered reinstatement as a matter of course, even in cases involving nontenured teachers. See, e. g., Gieringer v. Central School District No. 58, 477 F.2d 1164 (8th Cir.) (reversing unpublished district court decision), cert. denied, 414 U.S. 832, 94 S.Ct. 165, 38 L.Ed.2d 66 (1973); Fisher v. Snyder, 476 F.2d 375 (8th Cir. 1973), affg. 346 F.Supp. 396 (D.Neb.1972); Rolfe v. County Board of Educ., 391 F.2d 77 (6th Cir. 1968), affg. 282 F.Supp. 192 (E.D.Tenn.1966); Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966) (en banc) (reversing 242 F.Supp. 721 (E.D.N.Car.1965)), cert. denied, 385

---

**5.** See Burdeau v. Trustees, 507 F.2d 770, 773 (9th Cir. 1974). We do not address the question whether the school district could refuse to rehire appellant, or whether any other school system could refuse to give her a teaching position, solely on the basis of her homosexual inclinations. Compare McKeand v. Laird, 490 F.2d 1262, 1265 (9th Cir. 1973) (dictum) and Andrews v. Drew Municipal Separate Sch. Dist., 371 F.Supp. 27 (N.D. Miss.1973) with Wentworth v. Schlesinger, 160 U.S.App.D.C. 172, 490 F.2d 740, 754

(1973) and Safransky v. State Personnel Bd., 62 Wis.2d 464, 215 N.W.2d 379 (1974). See also Perry v. Sindermann, 408 U.S. 593, 597–598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). But see Pettit v. State Board of Education, 10 Cal.3d 29, 36 n. 7, 109 Cal.Rptr. 665, 670 n. 7, 513 P.2d 889, 894 n. 7 (1973).

**6.** Cf. Jablon v. Trustees, 482 F.2d 997 (9th Cir. 1973).

**7.** See note 1 supra.

U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); Chase v. Fall Mountain Regional School Dist., 330 F.Supp. 388 (D.N.H. 1971); Hanover Twp. Fedn. of Teachers v. Hanover Community School Corp., 318 F.Supp. 757 (N.D.Ind.1970), affd., 457 F.2d 456 (7th Cir. 1972); McGee v. Richmond Unified School Dist., 306 F.Supp. 1052 (N.D.Cal.1969). Cf. Doherty v. Wilson, 356 F.Supp. 35 (M.D.Ga.1973).

The majority seems to rely on three arguments to uphold the district court's refusal to reinstate Ms. Burton. First, it emphasizes her lack of tenure which meant that she had no right to a renewal of her teaching contract. This fact alone certainly does not preclude reinstatement, as the cases cited above amply demonstrate. Moreover, Ms. Burton did have some rights under her contract with the school system. Unlike the teacher in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), in which the Supreme Court held that a hearing was not required when a school system decided not to renew a non-tenured teacher's contract, Ms. Burton had the right under Oregon law to demand written reasons for nonrenewal of her contract. Ore.Rev.Stat. § 342.-513(1) (1974). While the school board would have wide discretion in deciding whether to renew Ms. Burton's contract, the statutory requirement that it provide reasons for nonrenewal precludes it from having completely unfettered discretion since the board could not give a constitutionally unacceptable reason. E. g., Perry v. Sindermann, 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972) ("[T]he nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights."); Board of Regents v. Roth, supra, 408 U.S. at 573–574, 92 S.Ct. at 2707 (certain procedural safeguards are required if state action imposes a "stigma or other disability that foreclose[s] . . . freedom to take advantage of other employment opportunities" or puts a "person's good name, reputation, honor, or integrity" at stake). Thus it is inaccurate to say that Ms. Burton had no rights beyond the one-year term of her contract. But even if she had no rights, that does not mean that reinstatement is inappropriate; courts have often reinstated non-tenured teachers.[1]

Second, the majority contends that it was permissible perhaps even appropriate, for the district judge to balance plaintiff's interest in the vindication of her constitutional rights against the disruption and antagonism her reinstatement would cause.[2] I disagree. It is clearly inappropriate to consider community resentment in deciding whether to reinstate a person to a position from which she was unconstitutionally removed. Sterzing v. Fort Bend Independent School Dist., 496 F.2d 92, 93 (5th Cir. 1974) (per curiam) ("Enforcement of constitutional rights frequently has disturbing consequences. Relief is not restricted to that which will be pleasing and free of irritation."); Langford v. City of Texarkana, 478 F.2d 262, 267–268 (8th Cir. 1973). If community resentment was a legitimate factor to consider, few Southern school districts would have been integrated. One of the major purposes of the Constitution is to protect individuals from the tyranny of the majority. That purpose would be completely subverted if we allowed the feelings of the majority to determine the remedies available to a member of a minority

---

1. The fact that Ms. Burton was discharged pursuant to an unconstitutional statute and was not discriminated against on racial grounds or was not fired for exercising her First Amendment rights does not mean that she is entitled to a lesser sort of remedy than would be available in racial discrimination or First Amendment cases. All violations of constitutional rights should receive adequate redress, which in this case requires reinstatement.

2. The court assumes that there would be disruption and antagonism, but there is no evidence that this would be so. On the contrary, statements made by appellant's counsel at argument indicate that this would not be so as to the student body.

group who has been the victim of unconstitutional actions.[3]

Finally, the majority asserts that the monetary award given to Ms. Burton by the district court is adequate. Once again I disagree. It is questionable whether a monetary award is sufficient to deter the school board from taking similar unconstitutional action in the future. After all, what the board wanted was to be rid of Ms. Burton and the district court judgment allows it to accomplish that. If a similar situation arises in the future it might well conclude that it would be willing to pay a few thousand dollars in order to be rid of an unwanted teacher.

However, the real issue is not whether the remedy imposed here will deter the school board from taking similar action in the future. The real issue is how best to vindicate Ms. Burton's rights. She had a contract to teach for one year. The only way to restore to her what she lost is to require the school board to reinstate her as a teacher for one year. As the Fifth Circuit noted in Pred v. Board of Public Instruction, 415 F.2d 851, 856 (1969): "The right sought to be vindicated is not a contractual one . . . . What is at stake is the vindication of constitutional rights . . ." The Fourth Circuit has concluded: "There was no lawful basis for the . . . discharges, and the plaintiffs are entitled to be restored to the positions they occupied when they attempted to assert their rights. . . . Otherwise they would not be made whole, and similar discriminatory discharges would be encouraged." Smith v. Hampton Training School for Nurses, 360 F.2d 577, 581 (1966) (en banc), revg. 243 F.Supp. 403 (E.D.Va. 1965).

I would remand the case to the district court with instructions that the board be directed to reinstate Ms. Burton for a one-year period at the beginning of the next school year.

---

3. The case cited by the majority for the proposition that all circumstances should be weighed to determine whether reinstatement is appropriate, Pred v. Board of Public Instruction, 415 F.2d 851, 859 (5th Cir. 1969), primarily holds that a careful weighing of competing interests is required to determine whether the First Amendment rights of a teacher critical of the school system have been violated when the teacher is discharged. I do not think that it is the view of the Fifth Circuit that a weighing of interests is appropriate in determining a remedy once a constitutional violation has been established. *See* Sterzing v. Fort Bend Independent School Dist., *supra*.