William WITTKAMPER, a minor, by his father and next friend, W. W. Wittkamper, Sr.; Lora Ruth Browne, a minor, by her father and next friend, Conrad Browne, and Jan Jordan, a minor, by her father and next friend, Clarence Jordan, on behalf of themselves and others similarly situated, Plaintiffs,

v.

James HARVEY, Mrs. Katherine Howell, Melvin Tye, Mrs. Helen Davis, Mrs. Tommy Hooks, W. B. Smith, John Flatt, Jean Wise, W. R. Moyd, Charles Smith, Dr. J. H. Robinson, Fred Bowen, Warren Fortson, the School Board of Americus, Georgia, Defendants.

Civ. A. No. 486.

United States District Court
M. D. Georgia,
Americus Division.

Oct. 25, 1960.

William R. Harrell, Noah V. Shelley, Macon, Ga., for plaintiffs.

C. Baxter Jones, Frank C. Jones, Macon, Ga., for defendants.

BOOTLE, District Judge.

The above-styled action was filed on September 12, 1960 against the School Board of Americus, Georgia, and its individual members seeking, *inter alia*, to enjoin "defendants, their agents, employees, and successors, and all persons in active concert and participation with them from refusing to consider and grant, in the absence of legitimate objection, the applications of the plaintiffs and other qualified students who are members [of] or connected with Koinonia Farm, upon the same terms and conditions applicable to [other] white children who are residents of Sumter County and who seek admission to the Americus City School System; * * * and from refusing to approve the application[s] for admission from students of Koinonia Farm solely because of their religious and social beliefs and affiliations; * * * and from continuing to pursue the policy, practice, custom and usage of refusing to admit applicants from Koinonia Farm * * *." The complaint further prayed for money damages for each of the plaintiffs in the amount of $500. A hearing on plaintiffs' prayer for a preliminary injunction was held on September 28, 1960. At the conclusion of said hearing both sides agreed that

said hearing would also be considered as a plenary hearing on the prayer for a permanent injunction and that the court should issue a final judgment on the basis of the evidence introduced at said hearing, leaving only the question of damages for possible future consideration. Accordingly, both sides have submitted proposed findings of fact, conclusions of law, and judgments together with written briefs and arguments in support thereof and in opposition thereto. Having carefully studied said submissions as well as the cases cited therein and the evidence adduced at the hearing, the court is prepared to make its decision. The following is intended to constitute the court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52, 28 U.S.C.A.

Two completely separate and independent public school systems exist in Sumter County, Georgia—1) the City of Americus school system, operated primarily for students who are residents of Sumter County living in the City of Americus and governed by the Board of Public Education of the City of Americus, and 2) the Sumter County system, operated primarily for students who are residents of Sumter County not living in the City of Americus and governed by the Sumter County Board of Education. The City system includes one high school having about 550 students, and the County system includes two high schools—Plains, having about 120 students, and Leslie, having a smaller enrollment than that of Plains.

For a number of years prior to 1957, the City system generally did not admit into its high school any non-resident of the City because of overcrowded conditions. However, after the addition of eight new classrooms in the spring of 1957, the City Board made a written proposal to the County Board to govern the transfer of students between the two systems, but said proposal was rejected by the County Board. Although no written agreement was ever entered into between the two boards, a general agreement or understanding was subsequently reached between the two systems. Under that general agreement or understanding, in order for a child to transfer from one system to the other, the approval of both boards is required. If both boards approve the transfer, the state funds received for the child transferring, based on average daily attendance, are transferred from the system he is leaving to the system to which he is going. It was understood from the beginning between the two boards that there was no obligation to accept a student desiring to transfer from the other system nor any obligation to release a student desiring to transfer to the other system, and that action by each board would be entirely discretionary.

The procedure generally followed under the general agreement or understanding between the two boards for effecting a transfer to the City high school consisted, initially, of filing a form requesting release by the County system with the County Board. The County system usually furnished these forms in the spring of the year to students desiring to transfer the following fall. The County Board would then act on the requests filed with it, and, thereafter, the County School Superintendent would notify the City School Superintendent of the names of those students released by the County Board for transfer to the City system. The City Board would then consider the applications for transfer to the City system of those students released by the County Board, and accept or reject them.

During the period from 1957 to the present, the period during which this general agreement or understanding has existed between the two boards, all students who desired to transfer to the City system were released by the County Board. During the same period all students released by the County Board for transfer to the City system who made timely applications were accepted by the City Board except for students who resided at Koinonia Farm.

The evidence does not disclose the numbers of students applying for transfer from the County to the City system

in the years 1957, 1958 and 1959, although the evidence does disclose that two residents of Koinonia Farm, Jim Jordan, brother of plaintiff Jan Jordan, and Miriam Baer, made applications for transfer to the City system in August, 1958, which applications were rejected by the City Board. Conrad Browne, father of plaintiff Lora Ruth Browne, testified regarding the two applications of students residing at Koinonia Farm which were rejected in 1958 as follows:

"[T]he reasons that were given were that we had applied late in the summer, since they had not moved to Koinonia until late, after school had been out, and she and Jim had both come back and we wanted them to go to school at home, but the City Board said that they had more students than they were able to take care of. I believe, if I remember the figures correctly and I am pretty sure of these, that there were 65 students accepted that year and Jim and Miriam were beyond this number."

However, the following entry is contained in the official minutes of the Board of Public Education of the City of Americus of a meeting of August 25, 1958:

"*Request from Clarence Jordan.*

"Mrs. Jordan had been to see Mr. O'Neal concerning his [her] son, Jim, entering the high school and Miriam Baer, a Mennonite who is staying with the Jordans. Miriam is not well advanced. She attended the same school and lived in the same community as Jim in North Dakota. It seems that trouble has followed Jim wherever he has gone. These children are county students. Mr. Warren made the following motion: 'Beginning with the school term 1958–59, all students living outside the city limits and entering the Americus School System, must have the approval of the Americus Board of Public Education.' Mrs. Davis seconded the motion and it was carried."

The three plaintiffs who reside with their parents on Koinonia Farm, located in Sumter County outside the City of Americus, graduated in the spring of 1960 from Thalean School, a grammar school in the County system. They, along with 27 other students in the County system, filed requests for release by the County Board in order that they might transfer to the City system. The County Board granted all of the requests, and the County School Superintendent submitted the names of the students desiring to transfer to the City system to the City Board. The City Board accepted all of the students desiring to transfer to the City system except for the three plaintiffs, who were rejected without any reason being given by the City Board. About a month later, August 29, 1960, the parents of the three plaintiffs appeared before the City Board and asked that it reconsider its decision. After reconsideration the City Board again rejected plaintiffs, and on or about August 30, 1960, one of the parents was so notified and informed by one of defendants that the action had been taken by the City Board because it felt that it was to the best interest of all concerned not to accept the children.

The position of defendants is best summarized in their proposed finding of fact No. 15, part of which follows:

"They [the City Board members] believe that trouble and disorder would immediately result from the acceptance of these three minor plaintiffs into the City High School, not because of misconduct by the plaintiffs but as a result of mistreatment of them by other high school students. The members of the Board and the City Superintendent feel that their primary obligation is to the children of the City of Americus. They believe they are under no legal obligation to take the three minor plaintiffs and would simply be violating their duty and public trust if they allowed the three minor plaintiffs to come into the City system under these circumstances."

This fear of disorder in the high school if plaintiffs are admitted is based, defendants contend, on "widespread resentment and hostility throughout Sumter County against Koinonia Farm." They point to hostility toward Jim Jordan, brother of one of the plaintiffs, when he attended Plains High School in Sumter County in 1958. Plaintiffs concede that such hostility existed but to a lesser degree than defendants contend, and that such hostility and its effect on Jim Jordan were the cause of his withdrawal from Plains High School. Plaintiffs also admit that some resentment and hostility exist in Sumter County against Koinonia Farm, although they contend it has diminished since 1958. Plaintiffs point to the fact, which defendants admit, that plaintiffs and other grammar school children from Koinonia Farm have experienced no trouble while attending grammar school at Thalean School in the County system, and that Eleanor Jordan, sister of one of the plaintiffs, who graduated from Americus High School five or six years ago, experienced no mistreatment at the hands of City high school students. However, defendants point out, and plaintiffs concede, that resentment in Sumter County toward Koinonia Farm increased about 1956, although plaintiffs contend that resentment has diminished since 1958.

Because of the court's view of the law controlling this case, it is unnecessary to make a finding regarding the extent of the resentment and hostility in Sumter County against Koinonia Farm. Nor is it necessary to determine whether the defendants have reasonable grounds to believe that "trouble and disorder" will result from the admission of plaintiffs to Americus High School. The court does have the duty, however, to determine, under the evidence, the cause of community resentment which is itself the cause, under the contentions of defendants, of plaintiffs' rejections.

Clarence Jordan, father of one of the plaintiffs and a resident of Koinonia Farm, testified, concerning the beliefs of the residents of Koinonia Farm and their way of living, as follows in response to questions from plaintiffs' counsel:

"Q. Do you yourself know of any reason why these children would be resented in the school system other than being from Koinonia and entertaining certain ideas that are taught and practiced at Koinonia? A. I know of none whatsoever.

"Q. Now, at Koinonia certain ideas are taught and practiced, are they not, which many people perhaps might resent and take exception to? A. I should think so.

"Q. Specifically, isn't it true that you at Koinonia believe that racial integration is morally right? A. I wouldn't put it in those terms. We have never advocated racial integration. We simply have advocated that we believe in the kind of God as revealed in Jesus Christ and this we find in the New Testament, that God is no respecter of persons, that he looks not on the outward part but upon the heart. He pays no attention to the skin and does not evaluate people by the external appearances. Being followers of Jesus and believing in that kind of God, we accept as our brother anyone who is a son of God, whether he is white or black or what. We do not call that integration. We are not ruling on that or saying one way or the other. We simply call it a practice of our Christian beliefs.

"Q. Is another one of the things that is taught and practiced at Koinonia the idea of pacifism, of non-violence? A. Well, there again it revolves around our religious beliefs. Once again we believe that God is the kind of God as revealed in Jesus, and Jesus clearly did not use force and violence on his enemies. And we, therefore, have sought to practice, not so much non-violence, but as nearly as we can, active good will towards all men.

"Q. Now, have you taught or tried to teach your children this doctrine? A. We have tried to

teach our children that when they are hurt and slandered to try to love those who oppose them. We have taught them never to resort to violence to meet violence. We have tried to teach them to be honest and courageous and law abiding, and we have tried to bring them up in the nurture of Christian religion in all of its aspects, regardless of whether it be popular or unpopular.

"Q. And do you at Koinonia not practice a communal type of living? A. We share all things in common just as the early church did as described in Acts 2 and again in Acts 4, in which the writer of the Book of Acts clearly describes the early Christians as living together and holding all things in common.

"Q. Do you know of anything other than the beliefs you just expressed which would single your children out for hatred or contempt or ridicule or resentment? Do you know of any single doctrine or idea, practice or principle that might cause the resentment which the school board fears so much? A. I know of no other reasons."

The court finds that the resentment in Sumter County toward Koinonia Farm and its residents is because of the beliefs and practices articulated by Mr. Jordan, the fact that, at one time, Koinonia Farm was racially integrated, and unfavorable nationwide publicity accruing to Americus and Sumter County because of local difficulties resulting from said beliefs and practices.

Other factual contentions are made, but the findings made above are the relevant facts on which the decision in this case rests.

■ It is clear that the action of the Board of Public Education of the City of Americus in rejecting the applications of plaintiffs was state action within the meaning of the Fourteenth Amendment: "No *State* [emphasis supplied] shall * * * deny to any person within its jurisdiction the equal protection of the laws." Said City Board was created by an act of the General Assembly of Georgia, receives a substantial portion of its operating funds from the State of Georgia, and constitutes an arm of the state in operating a system of free public schools in the City of Americus.

■ The controlling question of law, though, is whether the City Board's action has denied plaintiffs the equal protection of the laws protected against state abridgement by the Fourteenth Amendment. Defendants contend that no student residing in Sumter County outside the City of Americus has a right to attend a school in the City system, and that "[w]here such right is sought it may as a matter of law be granted or denied for any reason at all, or for no reason, purely as a matter of grace and not as a matter of right." However, plaintiffs are complaining of denial of their rights to "equal protection of the law," equal protection being a right in itself independent of any right to attend a particular school system or a particular school in a system. Undoubtedly, the City Board could lawfully refuse to accept *any* students living in Sumter County outside the City of Americus into the City school system. However, when the City Board decides to accept some students living in Sumter County outside the City of Americus into the City school system and proceeds so to accept some such students, the City Board is then obligated under the law to afford equal protection to all such students desiring to transfer from the County to the City school system. Such obligation exists even though County students have no right to attend City schools, and even though transfer to the City system "is merely a privilege granted or withheld by the [City Board] at its pleasure." Glicker v. Michigan Liquor Control Commission, 6 Cir., 1947, 160 F.2d 96, 100. This is not to say, of course, that the City Board may not impose reasonable standards to be met before a transfer student will be accepted. Certainly the City Board may require superior academic and conduct records if it desires

to do so. And surely the City Board may limit the number of transfer students it will accept. But the City Board may not arbitrarily refuse to admit a transfer student for "any reason at all, or for no reason" if it is admitting other transfer students. Although the City Board has a discretion, it is a legal discretion which must be exercised in accordance with the Constitution's requirement that all persons be accorded equal protection.

The court is thus unavoidably faced with the question of whether the City Board's reason for rejecting the three plaintiffs was consistent with equal protection. Defendants concede that the three plaintiffs are very nearly model students and that no trouble in the Americus High School is to be expected from them. However, defendants have rejected plaintiffs because of anticipated trouble from other students as a result of community resentment against Koinonia Farm. As the court has already found, this community resentment is due to the religious and social beliefs and practices of the residents of Koinonia Farm. Therefore, the reason for plaintiffs' rejections is the religious and social beliefs of themselves, their parents and the other residents of Koinonia Farm. This will not do. "The vindication of rights guaranteed by the Constitution can not be conditioned upon the absence of practical difficulties." Orleans Parish School Board v. Bush, 5 Cir., 1957, 242 F.2d 156, 166. See also Cooper v. Aaron, 1958, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed. 2d 5. Since no lawful reason appears for the rejection of the three plaintiffs by the City Board, and since plaintiffs were rejected by the City Board without lawful reason while other County students similarly situated were accepted by the City Board, the Board's action in rejecting plaintiffs denied them equal protection of the laws. See Griffin v. Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; James v. Almond, D.C.E.D.Va. 1959, 170 F.Supp. 331; Niemotko v. Maryland, 1951, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267; Glicker v. Michigan Liquor Control Commission, supra;

Skinner v. Oklahoma, 1942, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655; Yick Wo v. Hopkins, 1886, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

Defendants have raised the question whether the present action is properly a class action. The court finds that other children residing at Koinonia Farm attend grammar school at Thalean School in the County system. Although no evidence was adduced at the hearing of any other students resident at Koinonia Farm who presently desire to transfer to the City system, in all probability when other Koinonia Farm children finish Thalean School some will desire to transfer to Americus High School. Therefore, the present action is properly a class action within the meaning of Fed.R.Civ.P. 23.

On the basis of the findings of fact and conclusions of law made herein, this court is of the opinion that plaintiffs' prayer for a permanent injunction should be granted.