**Corrie Anna DOHERTY, Plaintiff,**

v.

**Joe C. WILSON, Superintendent of Schools, Sumter County, Georgia; and Sumter County Board of Education, Defendants.**

**Civ. A. No. 748.**

United States District Court,
M. D. Georgia,
Americus Division.

March 15, 1973.

Howard Moore, Jr., Elizabeth R. Rindskopf, Moore, Alexander & Rindskopf, Atlanta, Ga., Norman J. Chachkin, New York City, for plaintiff.

Henry L. Crisp, Crisp & Oxford, Americus, Ga., for defendants.

OWENS, District Judge:

An evidentiary hearing was held January 18, 1973. The evidence presented shows that the following are the facts of this case:

Mrs. Corrie Anna Doherty, the plaintiff, is a young lady of the white race. She graduated from an Alabama college in December 1970. Soon thereafter she and her husband moved to Koinonia Farms—an interracial, religiously oriented, communal farm located in Sumter County, Georgia.

Defendant Joe C. Wilson was Superintendent of Schools for the defendant Sumter County Board of Education at the time of the occurrences out of which this case arose. He no longer serves in this position or any other position with defendant Board of Education.

Defendant Sumter County Board of Education approves the contracts for all teachers employed by the school system.[1] The board's general practice has been to defer to the judgment of the superintendent regarding the hiring of teachers. Accordingly, the board refuses to hire any applicant whom the superintendent has refused to recommend, although on occasion the board will exercise its own discretion as to whether to employ someone even though that person was recommended by the superintendent.

In February, 1971, plaintiff applied for a teaching position with the Sumter County school system. Defendant Wilson interviewed her, examined her qualifications and talked with her student teaching supervisor, but he proceeded no further with his investigations because of plaintiff being a resident of Koinonia Farms. Mr. Wilson believed that he would be fired by defendant Board of Education if he recommended a resident

1. "Local units of school administration; employment of personnel.—All teachers, principals, other certificated professional personnel, and all other school personnel of local units of administration shall be employed by local boards of education on the recommendation of the superintendent of schools of the local unit: Provided, however, any board, by a vote of three-fourths of the entire membership of such board, may employ teachers, principals, other certificated professional personnel and all other school personnel without the recommendation of the superintendent. Minimum qualifications for employment of all school personnel may be prescribed by the State Board of Education unless otherwise provided by law. Employment contracts of teachers, principals and other certificated professional personnel shall be in writing and shall be signed in duplicate by such personnel on their own behalf and by the local superintendent of schools on behalf of the local board of education." Ga.Code Ann. § 32–607.

of Koinonia Farms to be a teacher. Mr. Wilson, therefore, notified plaintiff that her residence created a problem in the consideration of her application.

Immediately following her first interview with the superintendent, plaintiff had met Mr. Cecil Dunn, then principal of Sumter County's Plains High School. Dunn indicated his interest in using plaintiff to substitute teach for him and subsequently on several occasions did in fact ask her to teach. On these occasions Dunn found plaintiff qualified and was satisfied with her teaching performance. The only adverse criticism he received concerned the length of plaintiff's skirts. Other teachers had received similar criticisms and Dunn had seen nothing objectionable about plaintiff's appearance. Dunn subsequently discontinued his use of plaintiff as a substitute when it was made known to him that many residents of Sumter County did not approve of such contact with Koinonia.

In April, 1971, plaintiff made a second application for employment with the Sumter County school system. She applied for a position teaching remedial courses under the Title I program. Mr. John Katerpodis, who was then the director of federal programs for the Sumter County school system, interviewed plaintiff, reviewed her qualifications and found her qualified. He indicated to plaintiff that he expected that there would be openings for the 1971–1972 school year and that she would probably be hired. He also indicated that this would not be made official until the applications were submitted for approval to the Board of Education in August of 1971.

Mr. Katerpodis subsequently recommended to defendant Wilson that plaintiff be hired to fill a vacant position, however because of her residence at Koinonia Farms, Mr. Wilson refused to recommend to the defendant Board that plaintiff be hired in a Title I position. Mr. Katerpodis and Mr. Wilson often discussed the qualifications of applicants for Title I programs; plaintiff was the only applicant actually recommended by Mr. Katerpodis for employment whom Mr. Wilson refused to recommend to the board.

Mr. Katerpodis notified plaintiff in late August, 1971, that she would not be hired. She subsequently made application for a teaching position with the Terrell County Board of Education, but was told that they needed no more teachers. She made no more applications for employment for the 1971–72 school year or for the 1972–73 school year.

At Superintendent Wilson's suggestion, on September 9, 1971, Mrs. Doherty asked to appear before the defendant Sumter County Board of Education to discuss her application. She was notified that she would be heard at the board meeting scheduled for September 14, 1971.

Plaintiff went to the board meeting with Mr. Millard Fuller of Koinonia Farms who spoke to the meeting on behalf of plaintiff. The discussion before the board centered on Koinonia Farms. One board member asked plaintiff why she lived there. Another questioned her concerning her philosophy of life. She declined to answer these questions at the meeting, and Mr. Fuller told the board members that the questions were irrelevant. Superintendent Wilson told the board that he had not recommended her for employment because she resided at Koinonia Farms.

The school board then went into executive session. Statements made by Mr. Wilson led some of the members to believe that there were no unfilled vacancies in the Title I program at that time. The board concluded the matter by voting to direct the superintendent to send plaintiff a letter which stated that she was not needed.

There were in fact several vacancies in the Title I program for which plaintiff was qualified as of September 14, 1971. Superintendent Wilson did not recommend her for one of these teaching positions because she was a resident of Koinonia Farms. The school

board ratified his action by its vote of September 14, 1971. Had the members of defendant Board been informed of the vacancies, the evidence indicates they would have ratified the superintendent's action anyway.

Superintendent Wilson's refusal to hire a Koinonia resident stemmed from a strongly adverse reaction which he had received following his recommendation that a Koinonia resident be hired for the school year 1970–71.[2]

Another Koinonia resident is presently employed as a teacher with the Sumter County school system. She obtained her position prior to and before defendants knew she was moving to Koinonia, but has been retained since it was learned that she resides there.

Plaintiff would have been paid $5,600 per year, plus a local supplement, if she had been hired to teach in the Sumter County school system. The evidence failed to show what the local supplement would have been for plaintiff.

Plaintiff, as a "Koinonia Partner", had to give up all substantial property holdings before moving to Koinonia. Had she been hired as a teacher her salary would have been given over to Koinonia or another charity, except for money which would go to pay off her educational loans. She could retain for herself only a small living allowance.

She did not know how much this would be.

Koinonia Farms is a communal farm in which all residents contribute to the work of running the farm. In turn, each is provided with a place to live, food, other basic needs and a small living allowance. Other profits of the farm go to charitable endeavors. Very few Koinonia residents hold salary paying jobs away from the farm. For example, plaintiff's husband is an Episcopal minister, but since moving to Koinonia has not been receiving a salary from that church.[3]

No evidence was presented as to the value of whatever services plaintiff has rendered to Koinonia since September, 1971. Neither was evidence introduced as to the value of the support plaintiff has received from Koinonia since September, 1971.

It is the above facts upon which this court must make its decision.

Plaintiff by this action in equity seeks monetary and injunctive relief against the Sumter County Board of Education for its failure to hire her to teach.

This court has jurisdiction under 28 U.S.C. § 1343[4] to enforce rights guaranteed plaintiff by 42 U.S.C. § 1983.[5]

Plaintiff seeks to maintain this lawsuit as a class action under Rules 23(a)

---

2. That person, a Mrs. Prutsman, was hired and continued to teach until she quit on her own free will.

3. For a further discussion of Koinonia Farms, see Wittkamper v. Harvey, 188 F. Supp. 715 (M.D.Ga.1960).

4. The statute provides in pertinent part:
 "§ 1343. Civil rights and elective franchise
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for

equal rights of citizens or of all persons within the jurisdiction of the United States;
 "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

5. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

and 23(b)(2), Federal Rules of Civil Procedure, on behalf of herself and all present, past and future residents of Koinonia Farms who have or may in the future seek employment with the Sumter County Board of Education.

■ The evidence, however, failed to show that any other Koinonia residents have been denied employment by the board or that anyone else living there even desires to apply for a position. The evidence did show that two Koinonia residents have in fact been given jobs. Also, there was no showing that the number of Koinonia residents who possess qualifications to teach and who might desire to teach in the public schools is so great that joinder would be impracticable. See Rule 23(a)(1), Federal Rules of Civil Procedure.

There having been no showing that a proper class exists, the plaintiff may not proceed as representative of a class.

■■ It is the Board of Education and not this court which is empowered by law to manage the Sumter County school system,[6] and it is their duty to hire and fire teachers as necessary. To this end, the law grants the board and its superintendent broad discretion.[7] The orderly operation of the schools depends upon their expertise and not upon whatever skills this judge may possess in the area of school administration.

■ The board's discretion, though, is not unbounded. Standards which they use in the evaluation of prospective teachers must be reasonably related to teaching competency and effectiveness. Sosa v. Board of Managers, 437 F.2d 173, 176 (5th Cir. 1971). Their standards must be applied in a uniform fashion so that no group of prospective teachers is singled out for far greater scrutiny than other prospective teachers. Trister v. University of Mississippi, 420 F.2d 499, 502 (5th Cir. 1969). Employment cannot be conditioned upon factors which infringe upon the free exercise of constitutionally protected rights. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, 577 (1972); Ferguson v. Thomas, 430 F.2d 852, 857 (5th Cir. 1970); Orr v. Thorpe, 427 F.2d 1129 (5th Cir. 1970).

■ The First Amendment of the United States Constitution guarantees "the right of the people peaceably to assemble". This provision has the effect of creating a constitutional right of free association. Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966). The due process clause of the Fourteenth Amendment prevents state governments from infringing upon this right. Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Public school officials are thus prohibited from interfering with a teacher's exercise of the right of free association. Ferguson v. Thomas, *supra*; Orr v. Thorpe, *supra*. See Elfbrandt v. Russell, *supra*.

■ In the case at hand the evidence indicated that the defendants would have hired plaintiff to be a teacher had she not been associated with Koinonia Farms. The plaintiff was denied the job because she chose to exercise her constitutionally protected right of free association.

■ Nevertheless, the constitutional guarantees of free speech, free association and free exercise of religion do not mean that a school board has no control over the activities or actions of its teachers. A school board may fire, refuse to rehire or refuse to hire a teacher who has exercised constitution-

---

6. Article VIII, Section V, paragraph I of the Constitution of Georgia provides in part: "Establishment and maintenance; board of education; election, term, etc.— Authority is granted to counties to establish and maintain public schools within their limits. Each county, exclusive of any independent school system now in existence in a county, shall compose one school district and shall be confined to the control and management of a County Board of Education." Ga.Code Ann. § 2–6801.

7. See note 1, supra.

ally protected rights in such a manner as to seriously impair or destroy her effectiveness as a teacher. Ferguson v. Thomas, *supra* 430 F.2d at 859. Fluker v. Alabama State Board of Education, 441 F.2d 201, 206 (5th Cir. 1971). See Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731 (1969); Butts v. Dallas Independent School Dist., 436 F.2d 728, 731 (5th Cir. 1971). (Factually supported fear of disruption justifies restriction of students' free speech). The burden of proof is on the State to prove justification of its actions once a plaintiff has shown that the state action stemmed from the plaintiff's exercise of constitutionally protected rights. Fluker v. Alabama State Board of Education, *supra*, 441 F.2d 206. The court must balance the individual's interest in free exercise of his rights with the government's need to maintain appropriate order and effectiveness in the operation of schools. Tinker v. Des Moines Community School Dist., supra, 393 U.S. at 503, 89 S.Ct. at 734, 21 L.Ed.2d at 739; Fluker v. Alabama State Board of Education, *supra*; Butts v. Dallas Independent School Dist., *supra*.

■ Several members of the Sumter County Board of Education testified upon the trial of this case that rumors had linked Koinonia residents with school boycotts and disruptions which had occurred in the past. None of them though contended that they had cause to believe that the plaintiff intended to use a teaching position as a front for promoting disruptive activity, Elfbrandt v. Russell, *supra*, or for undue proselytizing. *Cf.* School Dist. of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). Neither was there any contention that plaintiff's connection with Koinonia was likely to prevent her from fulfilling her duties as a teacher. There is nothing in evidence which indicates that the defendants' interest in keeping Koinonia residents out of the school system is more compelling than protection of the plaintiff's right of free association.

Plaintiff's complaint included prayers that she be hired as a teacher and for back pay and attorneys' fees.

■ The evidence showed that she was qualified for positions which were then available and that the defendant Board of Education acted wrongfully in failing to hire her. Therefore, she is to be offered the first available teaching position for which she is qualified.

■ Back pay is an element of equitable relief in a case of this nature. Harkless v. Sweeny Independent School Dist., 427 F.2d 319, 324 (5th Cir. 1970). Any award of back pay, though, must be reduced by whatever earnings the plaintiff received from other sources, Id., taking into consideration the normal duty of the plaintiff to take reasonable steps to mitigate damages.

■ Mrs. Doherty made only one other application for employment after receiving notice that the Sumter County School Board would not hire her. She made no applications for employment as a teacher for the 1972–73 school year with nearby Lee County or any other county. This lack of effort to find other employment, plus the defiant attitude taken by plaintiff and Mr. Fuller when they appeared before the board, plus the disapproval of personal wealth reflected in plaintiff's lifestyle, indicate that plaintiff's primary interest was to vindicate an infringement of her rights rather than to earn money. It is clearly her right to do this, but by doing so she failed to take reasonable steps which could have mitigated or possibly eliminated any personal financial injury. Her failure to take reasonable steps to obtain other employment makes it inappropriate for this court to award back pay.

Even if she had made a good faith effort to obtain another teaching job but had been unable to do so, the court would then have been required to reduce the amount she would have been paid by the amount she "earned" at Koinonia Farms. The failure of plaintiff to present any evidence as to the value of

the services she rendered to the farm, or of the value of the benefits she received from the farm, makes it impossible for the court to make a fair determination of what loss, if any, she suffered. This problem is further complicated by the fact that if plaintiff had been hired as a teacher she would have been obligated to pay almost all her salary to Koinonia Farms, rather than retain it for herself. She personally has suffered very little, if any, financial damage.

 This court may in its discretion rule that defendants should be liable for plaintiff's attorneys fees where such action would be appropriate under the circumstances of the case. Lee v. Southern Home Sites Corp., 429 F.2d 290, 295 (5th Cir. 1970). The court notes that in this case staff attorneys from the N.A. A.C.P. legal defense fund have been associated on this case. It is unlikely that much, if any, of the cost of this litigation is being borne by plaintiff.

 The court feels that justice in this case requires that the defendants, rather than plaintiffs, be liable for the legal costs of this action. Plaintiff is therefore awarded $2,500.00 attorneys' fees and all costs, which amounts are to be paid by defendant Sumter County Board of Education.

So ordered.