**Joseph Clinton McBRIDE, Plaintiff-Appellant,**

v.

**E. J. ROLAND, Commandant, United States Coast Guard, Defendant-Appellee.**

**No. 54, Docket 30331.**

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1966.

Decided Nov. 23, 1966.

Benjamin S. DuVal, Jr., New York City (Melvin L. Wulf, New York City, on the brief), for plaintiff-appellant.

Robert E. Kushner, Asst. U. S. Atty., for the Southern District of New York (Robert M. Morgenthau, U. S. Atty., and David E. Montgomery, Asst. U. S. Atty., on the brief), for defendant-appellee.

Before SMITH, HAYS and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Plaintiff-appellant, desiring to seek maritime employment, applied to appellee for special validation of his mariner's papers.[1] Appellee initially, after receiving plaintiff's answers to interrogatories and reference to a Committee, and there-

---

1. 50 U.S.C. § 191

    *   *   * Whenever the President finds that the security of the United States is endangered by reason of actual or threatened war, or invasion, or insurrection, or subversive activity, or of disturbances or threatened disturbances of the international relations of the United States, the President is authorized to institute such measures and issue such rules and regulations—

    *      *      *      *      *

    (b) to safeguard against destruction, loss or injury from sabotage or other subversive acts, accidents, or other causes of similar nature, vessels, harbors, ports, and waterfront facilities in the United States, the Canal Zone, and all territory and water, continental or insular, subject to the jurisdiction of the United States.

---

33 C.F.R. § 121.01

§ 121.01 *Requirements for special validation endorsement.*

    (a) Except as otherwise provided in this section no person shall be employed on a merchant vessel of the United States of 100 gross tons or over unless he is in possession of a Merchant

after, after hearing and recommendation by a Hearing Board and after further hearing and recommendation by an Appeal Board, denied plaintiff's application for special validation endorsement of his U. S. Merchant Mariner's Document, on the ground that appellee was not satisfied that plaintiff's "character and habits of life are such as to authorize or warrant the belief that your presence on board a merchant vessel of the United States would not be inimical to the security of the United States." Plaintiff, having exhausted administrative procedures, sued in the United States District Court for the Southern District of New York, seeking a declaratory judgment that the Commandant's acts were unconstitutional, an injunction against carrying out his decision and interfering with plaintiff's employment, and a court order to the Commandant that the application for validation endorsement be approved. The Court, Sylvester J. Ryan, Judge, found the evidence and procedures sufficient, denied plaintiff's motion for summary judgment, and dismissed the action. 248 F.Supp. 459. From this order, plaintiff appealed. We find no error, and affirm the order of the District Court.

July 19, 1959 appellant, who had been a merchant seaman prior to 1948, filed with his application for a specially validated merchant mariner's document, a questionnaire which called for answers as to membership in certain organizations, including the Communist Party. He disclosed that he had been a member of the International Workers Order. On request for further information he admitted membership in the Communist Party from 1938 through 1950 only. He admitted employment at Communist Party Headquarters in New York from 1948 to 1959, signing a 1939 Communist Party nominating petition, participation in 1951 and 1952 May Day parades, participation in the 1942 Communist Party election campaign, registered affiliation with the American Labor Party 1949–54, signature of a nominating petition for Elizabeth Gurley Flynn for New York City Council in 1957, attendance in 1957 at the New York State Communist Party convention, the National Communist Party convention, and other Party conventions.

The Commandant informed appellant by letter that he was not satisfied appellant's presence on board vessels of the United States would not be inimical to the security of the United States, giving his reasons and notifying appellant of his right to a hearing, which was requested and held pursuant to 33 C.F.R. § 121.13, both sides presenting witnesses and exhibits. There was evidence of employment at Communist Party Headquarters in New York as elevator operator and night watchman from 1948 to 1960, and employment for two months in 1950 in organizing a peace demonstration for

Mariner's document bearing a special validation endorsement for emergency service.

\* \* \* \* \*

(c) By "employed" and "employment" is meant the engagement of any person to fill any licensed or certificated berth on board ship whether or not under articles and includes those engaged for standby, relief, or other capacities.

---

Title 33, C.F.R., Part 6—*Protection and Security of Vessels, Harbors, and Waterfront Facilities*

\* \* \* \* \*

Subpart 6.10—*Identification and Exclusion of Persons From Vessels and Waterfront Facilities* [originally issued as Executive Order 10173, 15 F.R. 7005 (1950)]

§ 6.10–1 *Issuance of documents and employment of persons aboard vessels.*

No person shall be issued a document required for employment on a merchant vessel of the United States nor shall any person be employed on a merchant vessel of the United States unless the Commandant is satisfied that the character and habits of life of such person are such as to authorize the belief that the presence of the individual on board would not be inimical to the security of the United States: *Provided,* That the Commandant may designate categories of merchant vessels to which the foregoing shall not apply.

68

May Day 1950 against United States involvement in the Korean War. Appellant admitted that he learned that the Party advocated the overthrow of the present form of government, and that he was uncertain whether he would have joined in revolution.

Appellant's application was denied October 14, 1963. Appeal was taken to the Appeal Board, relying on the record. The Board recommended affirmance and the Commandant on March 3, 1964 adhered to his decision. Complaint was filed in the United States District Court for the Southern District of New York May 15, 1964, dismissed on motion December 17, 1965, and appeal taken January 20, 1966.

Appellant contends that the Commandant's decision deprives him of liberty and property without due process of law, because evidence is lacking that appellant is likely to engage in espionage or sabotage, and absent such evidence deprivation of freedom of association or the right to hold private employment denies him due process of law guaranteed by the Fifth Amendment.

■ The rights he claims, to freedom of association and freedom to follow a chosen profession free from unreasonable governmental interference, are constitutionally protected. Aptheker v. Secretary of State, 378 U.S. 500, 507, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). To succeed, however, he must show not only that the right is one entitled to protection, but that his deprivation of it was without due process, i. e., arbitrarily or without sufficient evidence, or that the governmental interference is unreasonable. Procedurally, there is no lack of due process in the statutory scheme, with opportunity to present evidence and cross examine adverse witnesses before the Boards, determination by the Commandant at each stage, and judicial review of the final determination. Nor were the findings and determination made without sufficient evidence. Here there was evidence, not only of "mere" membership in the Communist Party, but

of long time (24 year) membership in and employment by the party, knowledge of the party's aims at overthrow of the government, false statements as to his membership on his original application, his admission that "it's hard to say" if he would have participated in a revolution while he was admittedly a member, proof that he not only performed the regularly assigned membership tasks of picketing, distributing literature, taking part in rallies, parades and demonstrations, but attended Communist schools and summer camps and state and national conventions, and during the Korean War was a paid organizer of peace demonstrations. The evidence amply supports the Commandant's finding:

> "that 'you were well indoctrinated in and fully realized, accepted, and approved the aims and objectives of the Communist Party, including the overthrow of the present form of Government in the United States by force and violence and Communist domination of the World.'"

The screening program is not unreasonable. The merchant marine, although involving private employment, is vulnerable to sabotage and espionage, and is obviously a sensitive area of employment of vital importance to the national defense. Compare American Communications Ass'n v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950).

Appellant relies heavily on Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961) and Noto v. United States, 367 U.S. 290, 81 S.Ct. 1517, 6 L.Ed.2d 836 (1961) in attacking the constitutional validity of the statute and regulations here. These cases, however, all involve interpretation of criminal statutes, and the specific intent necessary for a constitutionally based conviction. In the case before us we have at issue the reasonableness of regulation of employment in a peculiarly sensitive area of those who are knowing members and the

nature of whose membership activities makes it likely that their presence would be inimical to the United States. As interpreted and applied to the facts here we find nothing unreasonable in the regulations.

 Appellant's further contention that the regulation, in its use of the term "inimical," is unconstitutionally vague, is not well taken. In determining whether an applicant's presence would be not inimical, the Commandant is permitted to consider certain types of information, including membership in an organization designated by the Attorney General pursuant to Executive Order 10450 as amended. The Commandant has construed this to require "knowing" rather than "mere" membership, and such a construction in the context of "inimical" is surely not unreasonable. The term inimical itself has been used by the Court in a similar context. Aptheker v. Secretary of State, supra, 378 U.S. at 511, 86 S.Ct. 1238. The labor union oath struck down for vagueness in Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67 (2d Cir. 1966), was far broader in language: "[to] believe in * * * any organization that believes in * * * overthrow * * * by any illegal or unconstitutional methods." It required not even "mere" membership.

Appellant further contends that the screening program was not intended to be authorized by the Magnuson Act. The intention is quite plain, however, not only in the Act itself, but in its legislative history. See Senate Report No. 2118, Committee on Interstate and Foreign Commerce, 81st Cong. 2d Sess. (1950), 1950 U.S.Code Cong.Service, p. 2954,[2] Re-

marks of Senator Magnuson, 96 Cong.Rec. 10795.[3] United States v. Gray, 207 F.2d 237, 241 (9th Cir. 1953); Parker v. Lester, 227 F.2d 708, 715 (9th Cir. 1955); compare United States v. Aarons, 310 F.2d 341 (2d Cir. 1962).

An additional claim is that the Congress did not intend to authorize reliance on "secret evidence" or on undisclosed recommendations of the Boards. The decision and reports of the Boards in this case, however, are stated to be based solely on evidence on the record, and the recommendations were furnished to appellant as part of the record in the District Court and appellant has pointed out nothing which would have been of help to him.

We find no merit in appellant's other arguments.

The judgment dismissing the action is affirmed.

---

2. In enacting the Act, Congress sought to give
   "the President the power to safeguard against destruction, loss, or injury from sabotage or other subversive acts to vessels, harbors, ports, and other waterfront facilities. It [the legislation] will permit the United States to put in such protective measures short of the declaration of a national emergency.
   "The bill authorizes the President to employ such departments, agencies,

offices, or instrumentalities of the United States as he may deem necessary to carry out the purpose of this measure, to give utmost protection to shipping facilities."

3. "This measure will give the President the authority to invoke the same kind of security measures which were invoked in World War I and in World War II."