Joseph Clinton McBRIDE, Plaintiff-Appellee,

v.

Willard J. SMITH (substituted for E. J. Roland), Commandant, United States Coast Guard, Defendant-Appellant.

No. 138, Docket 32579.

United States Court of Appeals Second Circuit.

Argued Nov. 12, 1968.

Decided Dec. 2, 1968.

H. Thomas Coghill, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Lawrence W. Schilling, Asst. U. S. Atty., of counsel), for defendant-appellant.

Melvin L. Wulf, New York City, for plaintiff-appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal by the Commandant, United States Coast Guard, from an order of the District Court for the Southern District of New York raises a close question about the proper course of action under the mandate of the Supreme Court, 390 U.S. 411, 88 S.Ct. 1111, 19 L.Ed.2d 1271 (1968), remanding the case to the district court.

The action arose under the Magnuson Act, 50 U.S.C. § 191, which provides in part that whenever the President finds that "the security of the United States is

endangered by * * * subversive activity," he is authorized to issue rules and regulations "to safeguard against destruction, loss, or injury from sabotage or other subversive acts, accidents, or other causes of similar nature, vessels, harbors, ports, and waterfront facilities in the United States * * *." 50 U.S.C. § 191(b). By Executive Order No. 10173, 15 F.R. 7005 (1950), President Truman authorized the Commandant of the Coast Guard to require personnel of United States merchant vessels to hold "specially validated documents." Their form and the conditions and manner of their issuance were to be prescribed by the Commandant. The regulations issued by him provided for approval of the application if the Commandant was "satisfied that the character and habits of life of the applicant are such as to warrant the belief that his presence on board vessels of the United States would not be inimical to the security of the United States," 33 C.F.R. § 121.07(a). Section 121.03 of the regulations listed the standards that would warrant an adverse finding on this score; we set these out in the margin.[1]

After proceedings outlined in McBride v. Roland, 248 F.Supp. 459 (S.D.N.Y. 1965), aff'd, 369 F.2d 65 (2 Cir. 1966), the Commandant denied McBride's application for validation because of the latter's activity and membership in the Communist Party and other allegedly subversive or disloyal groups. McBride then brought this action in the District Court for the Southern District of New York to review the denial. The district court dismissed the complaint, this court affirmed, and the Supreme Court denied certiorari on May 29, 1967, 387 U.S. 932, 87 S.Ct. 2049, 18 L.Ed.2d 994 (1967), with three Justices dissenting. McBride promptly sought rehearing of the denial of certiorari in light of the recent docketing of an appeal from a decision of a three-judge court in Schneider v. Roland, 263 F.Supp. 496 (W.D.Wash.1967). The Court decided that case in January 1968, Schneider v. Smith, 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968). Whereas the denial of McBride's application had rested on the Commandant's appraisal of his activity and membership in the Communist Party and other organizations, the denial of Schneider's was based on refusal to answer wide-ranging questions which required him to list and give full details regarding all political and social organizations to which he had belonged. Noting that the questions were akin in this respect to those condemned in Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), the Court reversed the order upholding the Commandant. It said that 50 U.S.C. § 191(b) "speaks only in terms of actions, not ideas or beliefs or reading habits or social, educational, or political associations" and that it would "hesitate to conclude that Congress told the Executive to ferret out the ideological strays in the maritime industry." 390 U.S. at 25–26, 88 S.Ct. at 687. We are told that the district court remanded Schneider's application to the Commandant and that the latter validated his documents.

■ A fortnight after the *Schneider* decision, the Supreme Court requested the Solicitor General to file a response to McBride's petition for rehearing of the denial of certiorari, 390 U.S. 915, 88 S.Ct. 844, 19 L.Ed.2d 844 (1968). The response noted the *Schneider* holding

1. "(a) Advocacy of the overthrow or alteration of the Government of the United States by unconstitutional means.

"(b) Commission of, or attempts or preparations to commit, an act of espionage, sabotage, sedition or treason, or conspiring with, or aiding or abetting another to commit such an act.

"(c) Performing, or attempting to perform, duties or otherwise acting so as to serve the interests of another government to the detriment of the United States.

"(d) Deliberate unauthorized disclosure of classified defense information.

"(e) Membership in, or affiliation or sympathetic association with, any foreign or domestic organization, association, movement, group, or combination of persons designated by the Attorney General pursuant to E. O. 10450, as amended."

"that it could not be assumed that Congress intended to authorize a screening program directed at 'membership' or 'sympathetic association' in particular organizations." It was thus "apparent that at least one of the factors which the Commandant considered in denying petitioner's application should not have influenced his decision" and, since he did not weigh each factor separately, "it is impossible to say with certainty that petitioner was not prejudiced by the fact that the Commandant relied, in part, on an improper standard." While the Solicitor therefore agreed that the Court should grant the petition for rehearing and vacate the judgment, "it does not follow, however, that petitioner must necessarily be granted a special validation." Rather "the Commandant should be afforded a further opportunity to determine whether, in light of all the facts that have been presented plus any additional facts that may be developed at a further hearing, petitioner may be excluded from service in the merchant marine because there is substantial reason to believe that he might engage in sabotage or other subversive acts." The conclusion was "that this case should be remanded to the district court with directions that the Commandant be ordered to reconsider petitioner's application without reliance on the standards set forth in 33 C.F.R. § 121.03(e)."

On March 18, 1968, the Supreme Court granted the petition for rehearing, vacated the order denying certiorari, granted the petition for the writ, vacated this court's judgment and remanded the case:

> "to the United States District Court for the Southern District of New York for further consideration in light of Schneider v. Smith, 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799, in accordance with the suggestion of the Solicitor General and upon an independent examination of the entire record."

The district judge read this "as a direction to this Court, not the Commandant, to make an 'independent examination of the entire record' and then to decide, in the light of *Schneider*, what ought to be done." He thought that the words "in accordance with the suggestion of the Solicitor General" had been "loosely thrown in," that the suggestion had been only partly adopted, and that the controlling part of the mandate was the direction for examination by the court. He found nothing in the record to show any action "by McBride, as opposed to associations and ideas and beliefs, which would justify denial of his application" and concluded that the Commandant had relied solely on the latter. Accordingly he directed the Commandant to issue a special validation endorsement for McBride.

While this is a possible interpretation, we do not regard it as the one most consistent with the mandate. We start from the principle, long recognized by the Court, that "an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge." FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656 (1940); Fly v. Heitmeyer, 309 U.S. 146, 148, 60 S.Ct. 443, 84 L.Ed. 664 (1940); FTC v. Morton Salt Co., 334 U.S. 37, 55, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); Konigsberg v. State Bar of California, 366 U.S. 36, 43–44, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961). See also Mr. Justice Douglas' statement in FPC v. Idaho Power Co., 344 U.S. 17, 20, 73 S.Ct. 85, 87, 97 L.Ed. 15 (1952), that "the guiding principle * * * is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration." The Solicitor General's proposal accorded with this principle. In the first instance the Commandant was to review the existing record and decide whether, in light of the experience and judgment inherent in his office, McBride's acts as a member of the Communist Party and its affiliates, as distinguished from mere

membership therein, created a danger of sabotage or other subversive acts sufficient to warrant denial of validation. When the Court in *Schneider* spoke of "actions," it could not have meant only consummated acts of sabotage. Perhaps more important, the Commandant would not be limited, under generally applicable principles governing the relation of court and agency, to the record already made. In Fly v. Heitmeyer, supra, 309 U.S. at 148, 60 S.Ct. at 444, where the FCC proposed on remand not only to review the existing record but also "to reopen the record and take new evidence," the Court held this proper since "the Commission's duty was to apply the statutory standard * * * after it fell into legal error as well as before. If, in the Commission's judgment, new evidence was necessary to discharge its duty, the fact of a previously erroneous denial should not, according to the principles enunciated in the Pottsville Broadcasting Co. case, supra, bar it from access to the necessary evidence for correct judgment." In view of the regulations that erroneously allowed denial of McBride's application on the basis of mere membership in the Communist Party, the Coast Guard may have failed to seek evidence of specific acts that would have supported the same result. Cf. McNamara v. Remenyi, 391 F.2d 128 (9 Cir. 1968). Finally, the record here was made five years ago. The reasons that have led the Court to remand to an agency where the staleness of a record might operate to the detriment of a person charged with subversion, American Committee for Protection of Foreign Born v. SACB, 380 U.S. 503, 85 S.Ct. 1148, 14 L.Ed.2d 39 (1965); Veterans of the Abraham Lincoln Brigade v. SACB, 380 U.S. 513, 85 S.Ct. 1153, 14 L.Ed.2d 46 (1965), apply equally when it is the national security that may be compromised. In other areas where an agency's determination affects future status, courts have felt free to remand when the record has become so stale that they cannot determine what the right result should be. See NLRB v. Eanet, 85 U.S.App.D.C. 371, 179 F.2d 15 (1949); WORZ, Inc. v. FCC, 120 U.S.App.D.C. 191, 345 F.2d 85 cert. denied, 382 U.S. 893, 86 S.Ct. 180, 15 L.Ed.2d 150 (1965); and, generally, Freedman, The Uses and Limits of Remand in Administrative Law: Staleness of the Record, 115 U.Pa.L.Rev. 145 (1966). Cf. Konigsberg v. State Bar of California, supra, 366 U.S. at 44 n. 7, 81 S.Ct. 997, 6 L.Ed.2d 105.

We thus think it clear that if the Supreme Court had simply vacated this court's judgment and remanded to the district court for reconsideration in light of Schneider v. Smith, a remand to the Commandant would have been required.[2] This would follow the more strongly from the addition of the phrase "in accordance with the suggestion of the Solicitor General"; we see no reason for assuming this was "loosely thrown in." The district court's conclusion thus hinges on the final words of the mandate, "and upon an independent examination of the entire record." This is too slender a basis for believing the Court wished the district judge to proceed directly *contrary* to "the suggestion of the Solicitor General" and accepted principles of administrative law. The words can be given sufficient effect by reading them to mean that no remand to the Commandant was necessary if the district court was satisfied that he would and permissibly could have denied validation under the *Schneider* standards and also that the court was to exercise its judgment if the Commandant should again refuse to validate after reexamination of all relevant facts.

Appellee's counsel raises the spectre that to countenance a remand to the Commandant creates a danger that if he again denies validation and is reversed, a further remand will be required and McBride will be pinioned in an infinite regress. A similar argument was made

2. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), is in no way inconsistent with this. See concurring opinion of Mr. Justice Harlan, 360 U.S. at 510, 79 S.Ct. at 1420.

in the *Pottsville* case, and the Supreme Court's answer, 309 U.S. at 146, 60 S.Ct. 437, 84 L.Ed. 656, is equally valid here. However, we do agree that after all these years the decision on McBride's application should be forthcoming with undeliberate speed. Accordingly, while we reverse the order and direct a remand to the Commandant for further proceedings in accordance with Schneider v. Smith, we further direct that if the Commandant does not render a decision within 60 days after the order of remand to him, McBride may make an appropriate application to the district judge.

It is so ordered.