**Robert Wallace McKEAND, Petitioner-Appellant,**

v.

**Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.**

**No. 71-2169.**

United States Court of Appeals, Ninth Circuit.

Oct. 9, 1973.

Rehearing Denied Jan. 30, 1974.

---

Burton Marks (argued), Beverly Hills, Cal., for petitioner-appellant.

James R. Dooley, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Los Angeles, Cal., for respondents-appellees.

Before MERRILL and WALLACE, Circuit Judges, and PECKHAM,* District Judge.

WALLACE, Circuit Judge:

McKeand, an electronics engineer and an admitted homosexual, had been em-ployed by a government contractor and was granted a secret security clearance in 1960. In 1967, his employer request-ed that McKeand's clearance be raised to top secret. Subsequent to an adminis-trative investigation and hearing, pri-marily involving alleged homosexual ac-tivity, the hearing examiner concluded that "it is not clearly consistent with the national interest to grant Applicant [McKeand] security clearance at any level." McKeand's administrative appeal was unsuccessful. The security clear-ance denial was challenged by McKeand in the district court. Summary judg-ment was entered against him from which he appeals. We affirm.

By Executive Order, the Secretary of Defense was directed to prescribe regu-lations which would safeguard classified information in companies such as Mc-Keand's employer. Access was to be al-lowed "only upon a finding that it is clearly consistent with the national in-terest to do so." Exec. Order No. 10865, 25 Fed.Reg. 1583 (1960), as amended, 3 C.F.R. 83, 84 (1973). *See* Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230, 238–39 (1969), cert denied, 397 U.S. 1039, 90 S.Ct. 1360, 25 L.Ed.2d 650 (1970); Clifford v. Shoultz, 413 F.2d 868 (9th Cir.), cert. denied, 396 U.S. 962, 90 S.Ct. 426, 24 L.Ed.2d 426 (1969). Here a contrary finding was made, the basis of which is clearly dis-positive of this appeal.

We are aware of the division of opin-ion as to whether a person can lose his or her security clearance on the sole ba-sis of private homosexual activity. *See, e. g.,* the majority and the dissent in *Adams, supra.* But here, the hearing examiner not only found McKeand was a homosexual, but, in addition, made spe-cific findings of fact clearly describing why his homosexuality posed a threat of divulgence of classified material. The examiner found that "it is apparent from the record of the hearing that he fears disclosure; he is thus a target for

* Honorable Robert F. Peckham, United States District Judge, Northern District of Califor-nia, sitting by designation.

1264

coercion or pressure which may be likely to cause action contrary to the national interest." This constitutes a rational nexus—in addition to the fact of homosexuality—between McKeand's conduct and the government's denial of his security clearance.

Judicial review of factual determinations by agencies is limited to whether, considering the record as a whole, there is substantial evidence supporting the findings. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951). Assuming, without holding, that this test should be applied,[1] the district court correctly found it was met.[2]

The examiner having found and relied on such a rational nexus, and the findings being supported by substantial evidence in the record, it is unnecessary for us to decide whether a finding of homosexuality alone would be sufficient to uphold the denial of a security clearance.

The other issues raised are without merit.

Affirmed.

PECKHAM, District Judge (dissenting):

McKeand, an engineer for a major defense contractor, held a "secret" security clearance from 1960 to 1967. At his employer's request, he applied to the Department of Defense for a "top secret" security clearance in 1967. The Depart-

ment of Defense, during its investigation of McKeand's application, discovered letters which indicated that McKeand was a homosexual. Also, McKeand submitted a written statement which reviewed his infrequent homosexual activity during the last three decades.

The Department of Defense informed McKeand that his security clearance would be revoked. Department of Defense administrative hearings upheld this revocation decision. McKeand's action in district court ended in summary judgment in favor of the Department of Defense. McKeand now appeals that decision to this court.

This court must decide whether the Department of Defense's decision to deny McKeand a security clearance at any level is supported by substantial evidence on the record studied in its entirety. The majority, despite its reservations, applies this standard as stated in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951):

"The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. . . . [A] reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, in-

1. The government suggests that a lesser test might be applied and refers to 5 U.S.C. § 554(a)(4). See McBride v. Roland, 248 F. Supp. 459, 465 (S.D.N.Y.1965), aff'd 369 F. 2d 65 (2d Cir. 1966), vacated on other grounds, 390 U.S. 411, 88 S.Ct. 1111, 19 L. Ed.2d 1271 (1968).

2. The district court held that "[t]he record contains substantial evidence, if such is required, to support the findings of the Appeal Board and the final determination of that Board . . . ." In that record, there is evidence that McKeand feared disclosure of his homosexual activities. For example, the hearing examiner found that, during an interview with Special Agents of the Office of Special Investigations of the United States

Air Force, McKeand "stated that rather than have an exposure of his background in conjunction with his security clearance, he planned to terminate his employment . . . . The OSI agents reported to their Headquarters that they were terminating their investigation because security clearance for the Applicant would no longer be required." When it was discovered that he did not terminate his employment, the investigation was reinstated.

The dissent contends that this is insufficient to show McKeand's fear of disclosure, reasoning that such fear was not significant or he would not have initiated this action. But the question is not his state of mind when he filed his complaint—but at the time the clearance was denied.

cluding the body of evidence opposed to the Board's view." *Id.* at 488, 71 S.Ct. at 464.

I cannot agree that the Department of Defense's decision is supported by substantial evidence.

The Department of Defense revoked McKeand's security clearance pursuant to 32 C.F.R. §§ 155.4, 155.5 which implement a presidential order concerning security requirements for government contracts. Section 155.4 states that the "policy" that "(a) Access to classified information shall be granted or continued only to those individuals who have been determined eligible based upon a finding that to do so is clearly consistent with the national interest." Section 155.5 list various "criteria" upon which the Department of Defense could deny an individual a specific security classification. The relevant "criteria" for this case include: "(n) Any behavior, activities, or associations which tend to show that the individual is not reliable or trustworthy."; and "(p) Any criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct, habitual use of intoxicants to excess, drug addition, or sexual perversion."; and "(s) Any facts or circumstances which furnish reason to believe that the individual may be subjected to coercion, influence, or pressure which may be likely to cause action contrary to the national interest."

The Department of Defense, to justify the revocation of the security clearance, must offer proof of a rational connection between McKeand's admitted homosexuality, and his ability to safeguard classified information. Gayer v. Laird, 332 F.Supp. 169, 171 (D.D.C.1961) (and cases cited therein). Such proof cannot depend solely on the use of convenient labels such as "immoral conduct." Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969). "A pronouncement of 'immorality' tends to discourage careful analysis because it unavoidably connotes a violation of divine, Olympian, or otherwise universal standards of rectitude." *Id.* at 1165. Rather, the government must present specific reasons why an individual's behavior makes him not reliable, not trustworthy, or open to coercion.

The mere fact that an individual admits his own homosexuality does not provide sufficient reason without further evidence to justify withdrawal of a security clearance. Wentworth v. Laird, 348 F.Supp. 1153 (D.D.C.1972). To support a withdrawal, the record must reveal *facts* showing why and how the homosexual activity renders an individual a security risk. "Generalized assumptions that all homosexuals are security risks certainly cannot outweigh almost eight years of faithful service." Adams .v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230, 241 (1969) (Wright J., dissenting).

In the present case, the record gives scant evidence that McKeand posed any threat to national security. The record clearly establishes that since 1960 McKeand has never talked with others concerning secret information within his access; has never been approached by others seeking secret information; and, in fact, has never breached his security classification in any way.

The majority relies heavily on the hearing examiner's determination that McKeand feared disclosure of his homosexuality. However, the trial court, commenting on this suggestion, states,

> ". . . there is some indication in the record that the petitioner feared disclosure to his family, friends, and fellow workers. In the light of his subsequent willingness to challenge the Department's decision in a public proceeding such as his fear of disclosure does not appear to have been substantial."

In addition to this finding of insubstantiality, the record shows that McKeand no longer lives with either his wife or his children. Of course, any homosexual with a security clearance will fear disclosure—if not to his family and friends, at least to the government—as long as the Department of Defense continues to revoke security clearances on a

mere finding of homosexuality. However, the Department of Defense easily can cure the danger to national security allegedly posed by all homosexuals. It can abandon its arbitrary system of revoking security clearances solely on a finding of homosexuality and, thus, end homosexuals' fears that public exposure will cost them their security classifications.

The record does not present further evidence that McKeand's homosexuality made him unreliable, untrustworthy and open to coercion. Rather, the record reveals that the examiner's decision reflected an unfortunate preoccupation with McKeand's morality. The examiner stated,

"The extent and recency of the Applicant's criminal and sexually perverted conduct and his obvious involvement in such conduct with dissolute persons reflects acts of reckless and irresponsible nature which indicate such poor judgment and instability and a lack of reliability and trustworthiness as to suggest that he might disclose classified information to unauthorized persons or otherwise assist such persons in activities inimical to the national interest."

These remarks, of course, conflict with the clear evidence in the record that McKeand did not breach his security clearance during seven years of work. More important, the examiner's comments are indicative of the type of arbitrary assumptions that not only the examiner but also the trial court judge accepted. The trial court's findings note that,

"The examiner's determination, and to some extent, the determination by the Board of Appeal indicate a heavy reliance upon the general assumption that all homosexuals are security risks

. . . .

"We are not prepared to say that the Board might not reasonably *assume* that one subject to possible ar-

rest, lurid trial, and perhaps incarcerations is thereby rendered vulnerable to external pressures not consistent with the national interest." (emphasis not in the original) .

Thus, the trial court judge, and this court's majority, rely on findings colored by the examiner's and the Board of Appeal's assumptions. I find such reliance impermissible. The Department of Defense cannot defend its action on the assumption that all homosexuals necessarily are potential security risks. Wentworth v. Laird. See generally the discussion and the cases cited in Note, Security Clearances for Homosexuals, 25 StanL.Rev. 403, 410–415 (1973).

Of course, I recognize that the federal government has a legitimate interest in establishing a system of security classifications which safeguards national interests. However, the due process clause of the Fifth Amendment protects the "right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference." Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). This right deserves special protection when the government seeks to rest its determination of an individual's fitness for a job on a sexual categorization. See Mindel v. United States Civil Service Comm., 312 F.Supp. 485 (N.D.Cal.1970). *Cf.* Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Therefore, I cannot support the government's action in the present case without, at the very least, the presence of substantial evidence on the record studied in its entirety.

I believe that the revocation by the Department of Defense of McKeand's security clearance should be set aside unless and until the Department presents specific facts peculiar to McKeand that show him not reliable, not trustworthy, or open to coercion.

Therefore, I dissent.