**Robert H. MARKS, Plaintiff,**

v.

**James R. SCHLESINGER, Secretary of Defense, Defendant.**

**No. CV 74–347–DWW.**

United States District Court, C. D. California.

Nov. 26, 1974.

Shulman & Shulman, Beverly Hills, Cal., for plaintiff.

Henry E. Petersen, Asst. Atty. Gen., Edward S. Christenburn, Benjamin C. Flannagan, Larry L. Gregg, Attys., Dept. of Justice, Washington, D. C., William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Stephen D. Petersen, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

DAVID W. WILLIAMS, District Judge.

This is an action by an employee of a government contractor against the Secretary of Defense seeking declaratory and injunctive relief to set aside withdrawal of his secret security clearance for access to classified information.

This action arises out a program administered by the government to protect classified information relating to national defense. The program was established as a result of a decision by the Supreme Court in Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), in which the court invalidated the security program then in existence as lacking in procedural safeguards. The present program, bottomed on Executive Order 10865, 25 Fed.Reg. 1583, 3 C.F.R. 512 (1968), directs the Department of Defense to establish regulations governing the security of classified information within private industry. It further establishes that the basic standard for giving a security clearance is "a finding that it is clearly consistent with the national interest to do so." Also, the program provides a broad range of

procedural safeguards for individuals seeking or holding access to classified information.

On December 17, 1966, the Department of Defense issued an amended version of Directive 5220.6 which stated the department's policy with respect to the implementation of Executive Order 10865 as amended by Executive Order 10909. It provided in pertinent part:

"Access to classified information shall be granted or continued only to those individuals who have been determined eligible based upon a finding that to do so is clearly consistent with the national interest."

The Directive also puts forth several criteria for the application of the standard to individuals seeking such access. In addition, the Directive lists several principles which are labeled as "policy" for the application of the standard and of the criteria. The "Policy" provides that matters identified in the criteria:

". . . . may in the light of all surrounding circumstances, be the basis for denying or revoking an access authorization. The conduct varies in implication, degree of seriousness and significance depending upon all the factors in a particular case. Therefore, the ultimate determination of whether an authorization should be granted or continued must be an over-all common sense one on the basis of all of that which may properly be considered under this Regulation including but not restricted to such factors, when appropriate, as the following: the seriousness of the conduct, its implications, its recency, the motivations for it, the extent to which it was voluntary and undertaken with knowledge of the circumstances involved and, to the extent that it can be estimated and is appropriate in a particular case, the probability that it will continue in the future."

The remainder of the Directive is a detailed description of the procedures involved in processing cases. The program's administrative hierarchy is comprised of a Screening Board, a Hearing Officer and an Appeals Board.

The facts of this case are not in dispute. In 1970, while employed as an engineer with Honeywell, Incorporated, plaintiff was given CONFIDENTIAL access authorization. Prior to his civilian employment plaintiff had been granted SECRET clearance, and from 1966 to 1970 a TOP SECRET clearance, during his term of service in the United States Navy. That clearance was terminated upon plaintiff's separation from the service in 1970.

In 1971, plaintiff applied for a security clearance for access to information classified at the level of SECRET. Subsequently the Screening Board informed plaintiff that it possessed information that he may have engaged in certain homosexual conduct while in the Navy and that it would need additional information to determine that the granting or continuing of his clearance was clearly consistent with the national interest. Plaintiff was also informed that the Board had prepared interrogatories to obtain the information which they deemed essential. The questions were designed to develop details of plaintiff's homosexual conduct while in the Navy, if in fact such conduct ever occurred. Plaintiff was also advised that he could elect not to respond to the interrogatories, but that such a refusal would result in his present clearance being suspended and further processing of his case discontinued.

Plaintiff by letter answered questions I and II of the interrogatories and in response to question III submitted the affidavit of one of the original complaining witnesses repudiating his earlier statement. Plaintiff refused to answer the four remaining questions.

On August 2, 1972 the Board notified Marks that as a result of his refusal to answer their questions, further processing of his security clearance had been discontinued and his present clearance was suspended. He was further advised that he would not be eligible for access

to any classified information until the present matter was finally resolved.

 The parties agree that the role of the court in reviewing administrative proceedings is one of judicial restraint. But the court will not hesitate to intervene where necessary to prevent arbitrary and unreasonable governmental action, since there must be some rational relationship between the conduct found to exist and the actions taken by the administrative body. Greene v. McElroy, supra.

 Plaintiff argues that the questions he refused to answer were irrelevant to security considerations. The questions were as follows:

### IV

Since your resignation from the Navy in July, 1970, have you engaged in any homosexual act(s) with the aforesaid (Mr. A.)? If your answer is "Yes", name or describe the acts (e. g., mutual masturbation, fellatio, sodomy, etc.); advise approximately how many such acts you have engaged in with him; and specify the states and/or foreign countries in which they occurred.

### V

Aside from the aforesaid (Mr. A. and Mr. B.), have you engaged in any homosexual sexual act(s) with any other male person(s) at any time during the past ten (10) years? If your answer is "Yes", name or describe the acts; advise the approximate number of such other male persons with whom you have engaged in such acts and their approximate age range; and specify the states and/or foreign countries in which the acts occurred.

### VI

If your answer to either Question IV or Question V is "Yes", is it your intention to continue to engage in such acts?

### VII

If your answer to Question VI is "No", provide the circumstances of your last such act (i. e., date, place, age of other person involved, etc.).

The relevancy of these questions as to plaintiff's fitness for a security clearance is amply illustrated by the cases in which homosexual conduct has been found to be incongruous with granting a security clearance. McKeand v. Laird, 490 F.2d 1262 (9th Cir. 1973); Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969); Gayer v. Schlesinger, App. Div., 490 F.2d 740 (1973). For example, in *McKeand,* this circuit held that an applicant's susceptibility to coercion because he was a homosexual was a permissive ground to deny a security clearance. The examiner found that "it is apparent from the record of the hearing that he fears disclosure; he is thus a target for coercion or pressure which may be likely to cause action contrary to the national interest." 490 F.2d p. 1263. The potential susceptibility to coercion and pressure, which was decisive in *McKeand* emphasizes the relevancy of the questions to the government in determining whether it would be clearly consistent with the national interest to grant Marks a security clearance.

 Plaintiff also contends that the questions asked of him were violative of his First Amendment right to privacy. There is a right under the First Amendment for a person to keep private the intimate details of his sex life and this right applies to homosexuals as well. Gayer v. Laird, 332 F.Supp. 169 (D.D.C.1971). In fact, the government is fully aware of an individual's right to privacy as is indicated by security program's basic charter, Executive Order No. 10865, which provides:

"[I]t is a fundamental principle of our Government to protect the interests of individuals against unreasonable or unwarranted encroachment . . . ." 3 C.F.R. at 83 (1972).

■ In this particular case, I am convinced that the questions asked of plaintiff neither exceeded the authority of the defendant under Executive Order No. 10865 nor were they violative of the plaintiff's First Amendment right to privacy. One who seeks employment with the federal government may be under a greater obligation to communicate information about himself than the ordinary person. The D. C. Circuit in Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968) pointed out:

" . . . . . federal applicants for employment do not, wholly apart from Fifth Amendment concerns, forfeit all rights of privacy accorded to persons generally by the First Amendment, and that the reasonableness of requiring answers to certain questions may be greatly affected by the clarity and rationality of the policies sought to be effectuated by the questions. Where disclosure is required of circumstances of an intensely private and personal nature, the discloser is arguably entitled to know the standards by which his revelations will be assessed." P. 648.

In the present case, it was repeatedly explained to Marks that additional information was needed to ascertain whether he was engaging or had engaged in criminal conduct, (Criterion P); whether he was subject to coercion and influence, (Criterion S); whether he had engaged in acts that might indicate poor judgment and instability such as to suggest that he might disclose classified information, (Criterion O); and thus whether it was consistent with the national interest to grant or continue his security clearance.

Marks' interest in this case is the right to withhold information concerning his alleged homosexual conduct from a lawfully constituted investigatory board charged with the responsibility of protecting classified information. The Screening Board's investigative duties are extremely necessary to enable the Board to determine that the issuance of a security clearance to an individual is clearly consistent with the national interest. Section 155.4(b) of Directive 5220.6 provides that one who seeks a security clearance shall provide relevant information concerning his eligibility to the Board:

"In the course of an investigation, interrogation, examination, or hearing, the applicant may be requested to answer relevant questions, or to authorize others to release relevant information about himself. The applicant is expected to give full, frank, and truthful answers to such questions, and to authorize others to furnish relevant information. The applicant may elect on constitutional or other grounds not to comply. However, such a wilful failure or refusal to furnish or to authorize the furnishing of relevant and material information may prevent the Department of Defense from reaching the affirmative finding required by Executive Order 10865 as amended by Executive Order 10909 in which event any security clearance then in effect shall be suspended by the Assistant Secretary of Defense (Administration), or his designee, and the further processing of his case discontinued."

■ Marks' refusal to answer the questions addressed to him in the interrogatories has deprived the Screening Board of essential information needed to make a determination of his continued eligibility for a security clearance. Marks' limited interest cannot and does not outweigh the greater interests of the government in preventing highly sensitive and classified information from falling into the wrong hands. The government is entitled to seek information from an applicant by way of reasonable and relevant questions as to whether he has engaged in homosexual conduct; whether he intends to lead a homosexual life, and other relevant information with respect to particular conduct. In so holding, I am not suggesting that the government is entitled to conduct a fishing expedition into an applicant's sex life, be it homosexual or heterosexual.

The information sought as well as the questions asked must not only be relevant to a proper subject of inquiry but no more intrusive of an applicant's privacy than is reasonably necessary to allow responsible officials to make an informed and rational determination that granting or continuing an applicant's security clearance is consistent with the national interest.

Moreover, my holding in this case is limited to the situation in which an applicant has refused to answer reasonable and relevant questions required to assist the Screening Board's investigation of his continued eligibility for a security clearance. In this case the Board's performance of its delegated investigative duties were within the scope of authority granted by the President and the questions asked were no more intrusive of Marks' privacy than was reasonably necessary in order for the Board to perform its duties as imposed by Executive Order 10865.

My conclusion that the questions here involved were well within the parameters authorized by the Executive Order gains support from the D. C. Circuit's decision in Gayer v. Schlesinger, App. Div., 490 F.2d 740–756 (1973) where the questions asked were virtually identical to those asked of Mr. Marks. The court in *Gayer* held that the plaintiff's refusal to answer the questions was not justified.

■ Plaintiff also argues that the standards used to deny or grant security clearances are vague and overbroad as a matter of law. In Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969) the court in upholding the sufficiency of the standard as applied to a homosexual held that:

"D.O.D. 5220.6 sets forth many 'Criteria,' which include ample indications that a practicing homosexual may pose serious problems for the Defense Department in making the requisite finding for security clearance. They refer expressly to the factors of emotional instability and possible subjec-

tion to sinister pressures and influences which have traditionally been the lot of homosexuals living in what is, for better or worse, a society strongly oriented towards heterosexuality." P. 239.

Plaintiff's final contention is that he has been deprived of a vested right without due process of law. The leading case upholding the constitutional validity of the suspending a security clearance for refusing to answer relevant questions is this circuit's decision in Clifford v. Shoultz, 413 F.2d 868, (9th Cir. 1969). The court held that:

". . . . . the Screening Board's investigatory procedure under DD 5220.6 to make a factual determination upon which the necessity of a subsequent and fair adjudicatory proceeding depends is not violative of due process rights." P. 875.

The court then turned to the question of whether an applicant's " . . . . . failure to answer the questions directed to him was a ground upon which the suspension of his security clearance could permissibly be predicated." P. 875. Relying on a number of recent Supreme Court decisions holding that a failure to anwer questions directly relevant to the performance of job-related duties may be a proper cause for dismissal from public employment, the Court held that an applicant's refusal to answer questions did constitute a valid ground for suspension, citing Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), and Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation of the City of New York, 392 U.S. 280, 88 S.Ct 1917, 20 L.Ed.2d 1089 (1968).

■ The suspension of plaintiff's security clearance and the discontinuance of further processing his application was not the result of some governmental suspicion concerning his alleged homosexual conduct, but as in Gayer v. Schlesinger, supra was based on the inability of the government to continue its clearance procedure without Marks first

disclosing additional information. Marks' failure to answer the questions bars his challenge to the suspension of his clearance. Had he answered the questions and the Screening Board had determined that it would not be clearly consistent with the national interest to grant his clearance, the burden would have then been on the government to offer proof of a rational nexus between Marks alleged homosexuality and his ability to safeguard classified information. Gayer v. Laird, supra.

I therefore conclude that an applicant's refusal to answer reasonable and relevant questions asked of him by the Screening Board which has been authorized to fashion and apply an industrial security clearance program affording persons the safeguards of confrontation and cross examination cannot be justified. Accordingly, the government's suspension of Marks' clearance is sustained.

The defendant's motion for summary judgment is granted and the plaintiff's motion is denied.